Willey vs. Hodge and others.

WILLEY, Appellant, vs. HODGE and others, Respondents.

*September 7 — September 26, 1899.*

*Equity: Reformation of voluntary conveyance.*

A purely voluntary conveyance of land by a father to an adult son, founded on natural love and affection and made, without any prior consultation or agreement with the grantee, as a testamentary disposition of property, will not, after the death of the grantor and as against his other heirs, be reformed so as to make it describe the land which the grantor intended, but by mistake failed, to convey.

APPEAL from a judgment of the circuit court for Grant county: GEO. CLEMENTSON, Circuit Judge. *Affirmed.*

On and prior to January 4, 1896, John Willey was the owner of 400 acres of land in the town of Smelser, Grant county, Wis., a homestead in the village of Cuba City, and some real estate in Chicago. He died on January 22, 1896, leaving a widow, five sons, named John A., Samuel, *Thomas*, Henry, and Walter, and four daughters, named *Mary Hodge*, *Martha Terril*, *Nellie Kittoe*, *Grace E. Wills*, and a granddaughter, named *Belle Terril*, who was the only daughter of his deceased daughter Agnes. About January 4, 1896, said

John Willey, being aged and sick and not expecting long to
live, directed Charles Dent, an attorney residing in Cuba
City (who died before the trial of this action), to prepare
deeds, one to each of his sons, of a designated eighty of said
400 acres of land, and a deed to them jointly of the home-
stead in Cuba City. The attorney properly drew all of the
deeds except the one to the plaintiff, *Thomas.* It was the
intention of the father that the land described in his deed to
plaintiff should be the E. ½ of the N. W. ¼ of section 35, but
through mistake the deed was drawn covering the E. ½ of
the N. E. ¼ of the same section, the north forty of which
constituted a part of the eighty described in the deed to
Samuel, and the south forty was land never owned by him,
so that at the time of his death the eighty first above de-
scribed was not included in any deed signed by him. The
deeds so prepared were taken to Willey's house on Janu-
ary 4, 1896, and were duly executed by himself and wife, and
witnessed by Dent and one Nicholas Williams. No one else
was present. So far as the evidence shows, the deeds were
not executed according to any contract or agreement with
the sons, and none of them knew of their execution until
after his death. On that day, or afterwards, Dent took the
deeds to his office, and kept them in his possession until after
Mr. Willey died.

On January 28, 1896, Dent took the deeds to the Willey
homestead, and in the presence of the five sons delivered
them to Mrs. Willey. On February 26, 1896, Mrs. Willey,
two of her sons, and Dent went to Galena, Illinois, and de-
posited the deeds with the cashier of the Galena National
Bank, who gave a writing to the effect that he would act as
depositary of the deeds, and retain them in his custody
until Mrs. Willey's death, and upon due proof thereof would
deliver the same to the grantees named. Mrs. Willey died
on June 22, 1896. Pursuant to the agreement, the cashier
delivered the deeds to the several grantees on June 26, 1896.

The plaintiff immediately went into possession of the eighty first above described, supposing that this eighty was described in his deed, and has continued in possession thereof. About May 1, 1897, he discovered the mistake. On January 22, 1896, the father, John Willey, executed a will, in which he devised his Chicago property to his daughters and grandchild, the particulars of which devise are not important in this litigation. After the discovery of the mistake in the description in the deed by the plaintiff, his four brothers and *Martha* and *Belle Terril* executed to him quitclaim deeds of their interest in said land. The defendants *Mary Hodge, Nellie Kittoe,* and *Grace E. Wills* refused so to do, and claimed an interest in said eighty as heirs of their father. Whereupon the plaintiff brings this action against them for the reformation of said deed. The defendants answer, denying that said deed had ever been delivered.

The court found the facts as herein stated, and, in addition, that the deeds to the several sons were executed upon the consideration of natural love and affection only, and that there was no valuable consideration therefor. The principal question litigated upon the trial was whether there had ever been in fact a legal delivery of said deeds, and in his decision the trial judge said that upon that question his mind wavered and was uncertain. He based his decision upon the fact that the deed in question was a voluntary conveyance, and that the plaintiff had no standing in a court of equity, and could not secure a reformation. Judgment was given for the defendants, from which this appeal is taken by plaintiff.

*T. L. Cleary,* for the appellant, contended, *inter alia,* that courts of equity will interfere to enforce specific performance or to correct errors in voluntary conveyances in three classes of cases: (1) in favor of a wife; (2) in favor of a child; (3) in favor of a charity. 2 Change, Powers, §§ 2817–2930; Pomeroy, Eq. Jur. §§ 588–590; *Randall v. Ghent,* 19

Ind. 271; *German M. Ins. Co. v. Grim,* 32 Ind. 249; *Winslow v. Winslow,* 52 Ind. 8; *Mason v. Moulden,* 58 Ind. 1; *Owen v. Williams,* 114 Ind. 179. In family settlements equity will interfere to enforce specific performance or to correct errors in favor of the wife or children, and a meritorious consideration is sufficient. Pomeroy, Eq. Jur. §§ 588–590; Adams, Equity, 97, 98; *Buford's Heirs v. McKee,* 1 Dana, 107; *Hayes v. Kershow,* 1 Sandf. Ch. 258; *Edwards v. Jones,* 1 Mylne & C. 226; *Meek v. Kettlewell,* 1 Hare, 464; *Kennedy v. Ware,* 1 Pa. St. 445; *Caldwell v. Williams,* 1 Bail. Eq. 175, 176; *Stone v. Hackett,* 12 Gray, 227; *Souverbye v. Arden,* 1 Johns. Ch. 240; *Magniac v. Thompson,* 7 Pet. 348; *McCall v. McCall,* 3 Day, 402; *Bunn v. Winthrop,* 1 Johns. Ch. 329.

For the respondents there was a brief by *Lowry & Clementson,* and oral argument by *Geo. B. Clementson.*

BARDEEN, J. Following in line with the decision of the court below, the view we have taken of this case renders it unnecessary to determine whether, under the testimony, there has been a legal delivery of the deed under which plaintiff claims. Upon that question we express no opinion.

The deed in question was not made pursuant to any agreement or contract of settlement. It was a purely voluntary conveyance, founded upon natural love and affection, and was made without any prior consultation or agreement with the grantee. A family settlement is an agreement made between a father and his son or children, or between brothers, to dispose of property in a different manner from that which would otherwise take place. 12 Am. & Eng. Ency. of Law (2d ed.), 875; *Baker v. Pyatt,* 108 Ind. 61. It being considered that the transaction in question does not possess the essential elements of a family settlement, it is quite evident that the law regarding such settlements can have no application to this case. It is true, as argued by the appel-

Willey vs. Hodge and others.

lant, that equity will sometimes interfere in such cases, and correct errors, and enforce contracts, where the transaction is founded only upon a meritorious consideration. Cases illustrating this principle may be found in the notes, 12 Am. & Eng. Ency. of Law (2d ed.), 877. But in speaking of the disposition of a court of equity to interfere in cases of a voluntary contract, Judge Story says: "It has been said that there are exceptions, and that they stand upon special grounds; such as the interference of courts of equity in favor of settlements upon a wife and children for whom the party is under a natural and moral obligation to provide. But although the doctrine in favor of such exceptions has been maintained by highly respectable authority, yet it must now be deemed entirely overthrown by the weight of more recent adjudications in which it has been declared that the court will not execute a voluntary contract, and that the principle of the court to withhold its assistance from a volunteer applies equally whether he seeks to have the benefit of a contract, a covenant, or a settlement." 1 Story, Eq. Jur. § 433. See 2 Story, Eq. Jur. (13th ed.), § 793b.

Nor can we apply to this case the same doctrine of equity jurisprudence as is applied to the defective execution of powers. Quoting again from 2 Story, Eq. Jur. § 793b: "There may be a clear if not a satisfactory line of distinction drawn between cases of voluntary contracts, covenants, and settlements, where there has been a defective conveyance or execution thereof, and cases of a defective execution of a power. In the latter cases the donee of the power designs to carry into effect, not merely his own objects and interests but those of other persons, by executing the power in favor of persons who stand as volunteers upon a meritorious consideration, and for whom he is under a natural and moral obligation to provide; and his own defective execution of the power, by mistake or otherwise, not only defeats his own positive intention and moral obligation and duty to execute

the trust reposed in him, but it would, if not aided, also de-
feat the very objects for which the power was created by
third persons, whether it was created as a bounty, or upon
a valuable consideration passing between the donor and
donee of the power." No such considerations exist in this
case, and the freedom of equity intervention in cases of de-
fective execution of powers cannot be invoked to aid the
plaintiff in his dilemma. There can be no doubt of the *in-
tention* of the father to convey this tract of land to the plaint-
iff. His deed, however, fails to describe it. The rule is
quite familiar that a defective deed may be treated in equity
as an agreement to convey, and performance enforced. But
the rule is equally well understood that, when it appears
that the deed was voluntary, equity will not carry it into
effect or reform it. *Eaton v. Eaton*, 15 Wis. 259; *Hanson
v. Michelson*, 19 Wis. 498; *Petesch v. Hambach*, 48 Wis. 443.

It is suggested that, as the deed in question is based upon
what is called in the books a "meritorious consideration,"
the right to a reformation ought to be upheld. All the cases
I have been able to find in which such a consideration has
been upheld as warranting the intervention of a court of
equity rest upon the fact of the defective execution of a
power, or upon some matter of contract, such as an agree-
ment for a family settlement, or the result of negotiation
and agreement. These elements are entirely wanting in this
case. The grantee in the deed knew nothing of its execu-
tion until after the father's death. The son was an adult
person in no way dependent upon the bounty of the parent.
He has no claim upon his father at all, superior to his sisters,
against whom he seeks relief. While recognizing the prin-
ciple that in certain cases the performance of a moral duty
will justify the intervention of equity, Pomeroy, in his work
on Equity Jurisprudence, says that it is only effective within
very narrow limits, and will only "enforce the promise thus
imperfectly performed, as against a third person claiming

merely by operation of law, who has no equally meritorious foundation for his claim." Sec. 588. No case has been found that carries the rule to the limit sought in this case. On the contrary, modern decisions are the other way. Story, Eq. Jur. § 987, repeats the doctrine before quoted, and says the court will not interfere, although the parties stand in the relation of wife or child. A recent case in Michigan, cited by the trial court, fully sustains his conclusions. *Shears v. Westover*, 110 Mich. 505.

The transaction under consideration was, in a general sense, a testamentary disposition of property. The doctrine being established in this state that equity will not reform a will, the plaintiff is left without remedy. *Sherwood v. Sherwood*, 45 Wis. 357.

*By the Court.*— Judgment of the circuit court is affirmed.