ADELAIDE STRAYER

v.

LEODICY DICKERSON.

205  257
s213  415
205  257
215  4211

*Opinion filed October 26, 1903—Rehearing denied December 3, 1903.*

1. DEEDS—*when deed does not show a completed gift.* A voluntary conveyance which by mistake of description conveys a tract of land not intended to be conveyed does not establish a completed gift of the tract intended to be conveyed, so as to justify a court of equity in taking jurisdiction to correct the description.

2. SAME—*moral obligation must at one time have been a legal one to be valuable consideration.* Gifts of money by a wife to her husband prior to the passage of the acts giving to the wife a right to her separate property and allowing husband and wife to contract with each other, do not constitute a valuable consideration for a subsequent deed from the husband to the wife, since there is no antecedent legal obligation to re-pay the money.

3. SAME—*deed from husband to wife presumed to be voluntary.* A deed from husband to wife stating the consideration to be one dollar and love and affection is presumed to have been a gift or advancement, and the burden is upon the grantee to show the contrary.

4. SAME—*equity will not rectify alleged mistake in voluntary conveyance.* A court of equity will not lend its aid to the grantee in a voluntary conveyance to correct an alleged mistake of description.

5. HOMESTEAD—*homestead estate remains in grantor if wife does not join in deed.* A deed to property, embracing the homestead estate, in which the wife has not joined, leaves the homestead estate in the grantor.

6. SAME—*abandonment of homestead must be pursuant to deed to be effective.* Abandonment of homestead premises, in order to be effective to aid grantee of a prior deed in which the wife has not joined, must be made for the express purpose of giving effect to the deed.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

This bill was filed by Leodicy Dickerson to correct the description of the following described real estate, to-wit: The west half of the north-east quarter of section 29, township 22, range 4, east of the third principal meridian, McLean county, Illinois. The bill made Georgia Belle and Rosaline Dickerson, Cordelia Patterson, Elizabeth Hobart, and the appellant, Adelaide Strayer,

205—17

defendants, and was afterwards amended, making Fan-
nie Dickerson defendant instead of Rosaline, her mother,
who died during the pendency of the suit.

The bill alleges that the complainant is the widow
of the late Henry C. Dickerson, who during his lifetime
owned and possessed several tracts of land; that on the
20th day of July, 1892, he, for a valuable consideration,
intended to deed complainant the west half of the north-
west quarter of section 29, township 22, north, range 4,
east; that on that day he executed a deed to the com-
plainant intending to convey the said tract of land, being
the homestead, but by mistake made by the conveyancer
the land was wrongfully described as being the west half
of the south-east quarter of section 20.   The bill then
alleges that she and her husband, not knowing of the
error made in the deed of September 2, 1898, conveyed by
warranty deed the property described in said deed, with
other lands, to their daughters, Georgia Belle and Rosa-
line.   The bill also sets up the fact that Henry C. Dick-
erson died testate; that the will disposes of all of his
property, both real and personal, but that the land in
question was not mentioned in the said will; that from
the time of the execution of the deed appellee has had
control of the land, but is unable to convey or dispose
of the same by reason of the said mistake.

Adelaide Strayer filed her answer, admitting that on
the 20th day of July, 1892, as shown by the record, Henry
C. Dickerson made a deed for the west half of the south-
east quarter of section 20, township 22, range 4, and at
the time of the execution of said deed he was the owner
of the land, and that he had the right to convey it to
complainant, but whether he intended to do so or not,
or whether there was a mistake, she knows nothing, but
presumes that he intended to convey the tract actually
conveyed to complainant, and that she knows nothing
of the deed to Rosaline and Georgia Belle Dickerson, ex-
cept what is shown by the record; denies that the deed

of July 20 was executed for a valuable consideration and avers that the same was a voluntary conveyance, and that if Henry C. Dickerson ever had an intention to make a deed for the lands in section 29, it was simply an intention to make a gift to complainant, which was never executed and which was without consideration, and therefore cannot be enforced in a court of equity; avers that the land in question is vested in the heirs of Henry C. Dickerson, subject to the life estate of complainant.

The case was referred to the master in chancery to take testimony and report both conclusions of law and fact.

The will and deed having been offered in evidence, Wesley M. Dickerson testified that he lived in Leroy; that Henry C. Dickerson died May 20, 1899, leaving his widow and children, as set forth in the bill; that Henry C. Dickerson told him, before he died, that he had deeded the eighty acres of homestead in section 29 to his wife; that his wife had some money when they were married, and he just deeded her the eighty acres.

Leodicy Dickerson, the complainant, testified, without objection to her competency, that she knew about the making of the deed in 1892 and was present when it was made; that it was made at lawyer Packard's office, in Bloomington, Illinois; that her husband spoke of making it and asked her to accompany him, and that they drove to Bloomington for that purpose; that the deed was made and acknowledged and handed to her by her husband; that she then gave it to him to have recorded, which he did, and when the deed was returned it was again delivered to her by her husband and kept by her from that time on; that she had about $500 in money and land when they were married, in 1849; that the land was sold within five years of the marriage; that she afterwards received other money from her father's and mother's estates, which money had been on interest for twelve or fifteen years, and amounted in all to about $2000; that the money so received from the estates was not received all at once,

but was received in amounts along from time to time, and that her husband got this money and the benefit of the sale of the land; that after the conveyance of the eighty acres of land in question her husband rented it to renters, together with his land, except the last year before his death, when it was leased in her name. She was asked: "Now, at the time this deed was made, in 1892, did you pay Mr. Dickerson any money?" and answered, "Not on that occasion I did not; I did not pay it to him." She was further asked: "The intention was, Mr. Dickerson was going to give you this eighty acres of land?" and answered, "Yes sir; of his own free will."

The deed sought to be reformed is as follows:

"*This indenture witnesseth*, That the grantor, Henry C. Dickerson, of the town of Leroy, county of McLean and State of Illinois, for the consideration of love and affection and one dollar in hand paid, convey and warrant to my wife, Leodicy Dickerson, of the town of Leroy, county of McLean and State of Illinois, the following described real estate, to-wit: The west half of the south-east quarter of section number twenty (20), in township twenty-two (22), north of range four (4), east of the third principal meridian, situated in the county of McLean, in the State of Illinois, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this State.

"Dated this twentieth day of July, A. D. 1892.

Witness: M. W. PACKARD.            H. C. DICKERSON.  [Seal.]

"STATE OF ILLINOIS, ⎰ ss.
 *County of McLean.* ⎱

"I, Nathan T. Pusey, a notary public in and for the said county, in the State aforesaid, do hereby certify that Henry C. Dickerson, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed, sealed and delivered said instrument as his free and voluntary act, for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

"Given under my hand and notarial seal this twentieth day of July, A. D. 1892.

[Seal.]                    NATHAN T. PUSEY, *Notary Public.*

"Filed July 20, A. D. 1892, at 10:35 o'clock A. M."

Belle Dickersón testified that the complainant was her mother; that she knows all about the transaction; that she is one of the defendants and one of the partiès to whom the one hundred and twenty acres were deeded; that she heard her father say that he made a deed to the south eighty acres of the farm to her mother,—that it was her right and he wanted her to have it; that he referred to it as her land and had the insurance changed in her name; that her mother had control of the eighty acres of land before her father died and that since he has died she has had the full control; that she did not know about the mistake until about six weeks before the taking of the testimony, and that she was anxious that the correction should be made.

Fannie Dickerson testified that she lived in Leroy, and had heard her grandfather say many times that the eighty acres belonged to her grandmother and that she ought to have a deed, and wanted the correction made. The evidence further shows that she was sixteen years old at this time.

John Stapleton testified that he was attorney for Henry C. Dickerson for a number of years; that he was sick for some time before he died and was not able to come to town; that he would send for him to come down and consult with him three or four years before, and told him about deeding eighty acres of his home place to his wife, and gave his reasons; that he was talking about making a will; that he wanted his land divided, and repeatedly, after that, spoke about this land of his wife's; that he concluded that while he had a will made, to deed the balance of the farm to his two daughters, who were at home. "I made the will myself, and also the codicil to his will; it was his intention—was also so considered that his wife owned the south eighty."

The second clause of the will of Henry C. Dickerson is as follows: "I will and bequeath to my wife, Leodicy

Dickerson, all the residue of my property, both personal and real, for and during the term of her natural life, the proceeds thereof to be used by her for her benefit and living and for benefit and living of my daughters, Rose and Belle Dickerson, and my grandchild, Fannie, so long as they or either of them shall remain single and need assistance."

The third clause of the will is as follows: "It is my further will and desire that after the decease of my wife, Leodicy Dickerson, that my daughters, Rose and Belle Dickerson, shall have use of the residence property in Leroy, Illinois, on which I now live, for a home for them and Fannie, including all household furniture, etc., contained therein, providing they remain as now and need same for a home."

This will was made February 17, 1893. In September, 1898, a codicil to this will was made, in the second clause of which the testator uses the following language: "In case I die before my beloved wife, the use, rents and profits of my present home, known as block fifty (50), also block forty-nine (49), both in Conkling's addition to the original town of Leroy, also the west twenty-two (22) feet off of the west side of lot one (1), in block seventeen (17), original town of Leroy, during her life, then," etc. This is the only evidence in the record showing that the testator had changed his residence from the time, in 1892, when the deed in question was made, to the time of his death. We have carefully gone through the record, and find that no witness stated where the testator did live from the time of the making of the deed until the time of his death, or at the time of his death. The land in controversy is mentioned by all witnesses as the homestead, and so designated in the bill.

The cause was referred to the master to take the evidence, and he made his report finding that the proof sustained the allegations of the bill. Among the special findings made by the master are the following:

"10. I further find that complainant was married to said Henry C. Dickerson in the year 1849, and that soon after that time she turned over to him money and land to the amount of about $500, and during the years following she turned over to him over $2000 that she had received from her father and mother's estate, which moneys Mr. Dickerson used in his business and in the purchase of land without ever re-paying in cash any of same to her.

"11. I further find that on the occasion of the taking of the deed from him to her in question in this case no money was paid to him by her, but he simply deeded this eighty acres of land to her of his own free will.

"12. I hold, as a matter of law, that the general rule is, that a court of equity will not aid a mere volunteer to carry into effect an imperfect gift and will do nothing to enforce the completion of a voluntary gift, but I hold that that rule does not apply to the facts of this case; that this transaction is a completed transaction, and that this bill is filed, not to complete a gift or even complete a conveyance, but simply to correct an error in a description; that all the essentials of a complete conveyance, including delivery of deed and actually taking possession of the land, are present in this case, but by mistake of the scrivener the deed delivered failed to describe the land actually conveyed; that in such case the grantee takes the equitable title to the premises, and may in a court of equity correct the faulty description.

"13. I hold further, that even if it may be said that there is no valuable consideration for this conveyance, there was at least a meritorious consideration for this conveyance, and that a conveyance based upon such meritorious consideration will be aided, if necessary for its completion, by a court of equity; that a voluntary settlement fairly made is binding on the grantor, unless there is clear, decisive proof that he never parted, or intended to part, with the title, legal or equitable, and if he had retained possession of the deed it would have to be shown

by him that the conveyance was not intended to be absolute, the presumption being much more favorable to the grantee in such conveyances than in ordinary conveyances, and the law recognizing clearly an exception in such cases.

"14. However, I find that the consideration in this case may be said to be a moral obligation, arising from an antecedent legal ·obligation to pay back money and property received from the complainant, the enforcement of which obligation had been suspended by the operation of some positive rule of law, and hold, as a matter of law, that such consideration takes this case out of the class of cases denominated 'voluntary gifts,' and gives to this conveyance a sufficient consideration to call for the aid of a court of equity to complete the conveyance, even if the transaction is deemed to be incomplete because of the error in description."

To this report and finding of the master exceptions were made by appellant before the master and by him overruled, and again made in the circuit court and overruled by the chancellor.

Appellants offered no evidence. The cause was heard upon the bill, answers and report of the master, with the testimony and exhibits accompanying the same.

The errors relied upon are: That the decree is not supported by the evidence; that the court erred in overruling the exceptions to the master's report, and each of them; and that the court erred in rendering a decree for the complainant in the bill.

TIPTON & TIPTON, for appellant:

A court of equity will not aid a mere volunteer to carry into effect an imperfect gift or executory trust. *McCartney* v. *Ridgway*, 160 Ill. 129; *Weaver* v. *Weaver*, 162 id. 297; *Pratt* v. *Griffin*, 184 id. 519.

To constitute a valid gift *inter vivos*, possession and title must pass to and vest in the donee. Anything which

remains to be done to complete the gift cannot be enforced while the gift is incomplete and revocable. *Geer* v. *Goudy*, 174 Ill. 525; *McCartney* v. *Ridgway*, 160 id. 129.

A gift of a legal estate, capable of legal conveyance, is revocable at any time before the conveyance is made. *McCartney* v. *Ridgway*, 160 Ill. 129.

The death of Henry C. Dickerson before the completion of the gift of the land in question and the passing of the title to the complainant revoked the gift, if any such was intended. *Smith* v. *Smith*, 144 Ill. 611; *Williams* v. *Chamberlain*, 165 id. 210; *McCartney* v. *Ridgway*, 160 id. 129; *Neville* v. *Jennings*, 75 Ill. App. 511.

JOHN STAPLETON, for appellee:

After a voluntary gift of land is fully executed it stands upon the same footing as any other conveyance, where no rights of creditors intervene, and a mutual mistake will be corrected in a court of equity. *Purvines* v. *Harrison*, 151 Ill. 234; *Lynn* v. *Lynn*, 135 id. 18; Jones on Mortgages, (5th ed.) sec. 614; Am. & Eng. Ency. of Law, (2d ed.) 1009, and cases cited; *Atherton* v. *Roche*, 192 Ill. 252; *Deischer* v. *Price*, 148 id. 385.

There was an executed, as distinguished from an executory, conveyance. *Chilvers* v. *Race*, 196 Ill. 71; *White* v. *Cannon*, 125 id. 412.

Declarations of a decedent grantor against his interest, made to third parties, are admissible against his heirs. *Cline* v. *Jones*, 111 Ill. 563; *Hayes* v. *Boylan*, 141 id. 400; *Long* v. *Long*, 19 Ill. App. 383; *Freeman* v. *Freeman*, 65 Ill. 106; *Chilvers* v. *Race*, 196 id. 71.

A moral obligation is sufficient consideration to sustain a contract or deed of conveyance. *Morse* v. *Crate*, 43 Ill. App. 513.

Mr. JUSTICE RICKS delivered the opinion of the court:

The errors assigned in this case bring before us for review the entire record, and we are called upon to ascertain whether the evidence, under the law applicable

thereto, makes such a case as will sustain the decree of the court below.

The question first presented for consideration is as to the character of the contract or deed upon which the relief is sought;—is it an executed or executory contract? Appellee contends that it is an executed contract, and cites in support thereof, *Chilvers* v. *Race*, 196 Ill. 71, and *White* v. *Cannon*, 125 id. 412. The cases cited are not in point and do not support the contention. In *Chilvers* v. *Race, supra,* a husband executed certain trust deeds for the benefit of his wife for life, and remainders to certain persons therein named. The person named as trustee was a party to and signed each of said deeds charging him with the trust, and the deeds were promptly recorded. The maker died and the deeds were found among his papers. The only question there was the sufficiency of the delivery of the deeds and acceptance by the trustee to carry the estate to the remainder-men. The second case cited was where a husband and wife conveyed to a third party lands of the husband, with a verbal agreement on the part of the grantee that he would pay off certain claims against the land and re-convey the same to the wife. The grantee paid off the indebtedness and was killed before making the conveyance to grantor's wife. The question was whether the heirs of White, the grantee, were entitled to be reimbursed for the money White had paid to take up the mortgage against the land. It was held that he was a volunteer and was not entitled to subrogation, and that the money thus paid by him became an executed gift. Nor do we think any well grounded case can be found holding that where a deed is made intending to convey one tract of land but in fact conveys another not intended to be conveyed, it can be regarded as an executed conveyance of the tract intended to be conveyed but not in fact conveyed. An executed contract is one in which the object of the contract is performed, and if the object of the contract in question,

which appellee in her bill says was the conveyance of certain land in section 29, had been performed, she would have had no occasion to bring her suit. She was in possession of her land and deed, and nobody was interfering with either. But the deed she had was not for the land she had possession of and for which she claims it ought to be.

We are not without authority, however, upon the proposition, if authority were needed. In *German Mutual Ins. Co.* v. *Grim*, 32 Ind. 249, (2 Am. Rep. 341,) the following language is used: "If, then, the deed had been made to Mrs. Grim as she claims it was intended to be, she would have occupied the position of a voluntary grantee, without a valuable consideration; but if the conveyance did not describe the premises intended to be conveyed it would still have been inoperative and for that reason would not have been an executed gift, and as the conveyance was merely voluntary it did not invest her with any equity which she could have enforced." When made for a sufficient consideration such a deed is treated in equity as an agreement to convey the land intended to be conveyed, and performance enforced. (*Willey* v. *Hodge*, 104 Wis. 81; 76 Am. St. Rep. 852.) There was no trust created and no power conferred by the deed in question, and cases involving such questions have no application to the case at bar.

We are unable to see from the evidence in this case that there was a valuable consideration, or, in fact, that there was a consideration of any kind other than love and affection and such consideration as prompted the husband to make gifts to his wife, and we think this a gift *inter vivos* which was attempted to be made by deed. The master did not find that a valuable consideration was paid. He did find there was no money paid as a consideration for the deed. He also found that the consideration "may be said to be a moral obligation, arising from an antecedent legal obligation to pay back money

and property received from complainant, the enforcement of which obligation had been suspended by the operation of some positive rule of law." If this latter finding was supported by the evidence, there is abundant authority for holding such a consideration good. But we are unable to find in the evidence facts warranting the conclusion reached. The moral obligation sufficient to support the contract must have at some antecedent time been a legal one. (*Hart v. Strong*, 183 Ill. 349.) Complainant and the donor were married in 1849, at which time she had $500 in land and money. The land was disposed of within five years of the marriage. From the time of the marriage to the close of the war, along at irregular intervals, various sums of money, no one of which was fixed, but aggregating $2000, were received by appellee from her father's and mother's estates and turned over to her husband. All the money that was received by the husband from the wife prior to 1861 was the absolute property of the husband, and that which he received between 1861 and 1874 could not have been the subject of contract between them, as until that time their power to contract with each other was not recognized by law in this State. (*Thomas* v. *Mueller*, 106 Ill. 36.) There was not, then, at the time of the receipt of the money, or of any part, by the donor from appellee, any existing legal obligation to pay it back, and there was therefore no antecedent legal obligation suspended by the operation of any positive law out of which the moral obligation could arise.

Nor does the evidence sufficiently show that the moral obligation to re-pay this money so advanced by appellee to the donor was recognized by him to the extent of forming the consideration, or any part of it, for the conveyance in question. Appellee was allowed to testify, and she does not state that this money was mentioned in any way at the time of or before this conveyance. This was not a mere oversight, as she was particularly in-

quired of relating to the advancement of the money to her husband, and thus given the opportunity to say that although on the occasion of the making of the deed she did not pay him any money, this money previously had of her by him was talked over between them and it was agreed that it was to stand as the consideration, but, instead, appellee said that the intention of the donor was to give her the eighty acres of land of his own free will. This latter statement is supported by the deed itself, wherein the money consideration of one dollar is placed, coupled with love and affection, of which the latter would seem to have been the real consideration. It is hardly reasonable to suppose that if they had talked over the consideration from a money standpoint, and had agreed that he had received from her $2500 which he felt it his moral duty to pay and that he was going to make the deed in question for that purpose, they would not have related the matter to the attorney who drew the deed and seen that that sum appeared as the real consideration. It would rather appear that because she had given all to him he felt for her a greater and deeper affection than he might otherwise have felt, and that the increased love and affection for her were the inducing cause and consideration for the deed. This view is further sustained by the testimony of Wesley M. Dickerson, a brother of the donor, with whom he talked a number of times about the transaction, and stated in connection with it the fact of having had money from his wife when they were married, and a similar conversation with his attorney, who was appellee's attorney in this proceeding also, and with whom he talked about making the will, and in that connection told him that the homestead eighty had been deeded to appellee, and that he had land and property of her when they were married. But in none of these conversations did he say that the re-payment of the money was the consideration for the deed. The deed being from the husband to the wife, the pre-

sumption is that it was intended as a gift or advancement, and the burden is upon the grantee to show the contrary. *Lewis* v. *McGrath*, 191 Ill. 401; *Smith* v. *Smith*, 144 id. 299.

The master further finds that a meritorious consideration, at least, was given, and in effect holds that this involves a voluntary settlement, and that such a settlement, when once made, is binding, unless there is clear, decisive proof that the donor never parted, or intended to part, with the legal or equitable title. No authority is cited in support of this holding, and is not relied upon by appellee, so far as we can learn by her brief and argument. The rule, as it seems to be established in this State, is, "that the court will not execute a voluntary contract, and that the principle of the court to withhold its assistance from a volunteer applies equally whether he seeks to have the benefit of a contract, a covenant or a settlement." (*Wadhams* v. *Gay*, 73 Ill. 415.) This rule is quoted from 1 Story's Eq. Jur. sec. 433, where the question, after elaborate consideration, is thus resolved. In the early case of *Webb* v. *Alton Marine and Fire Ins. Co.* 5 Gilm. 223, it was said (p. 226): "It is a stern rule of equity that it will not decree the specific execution of a contract unless it is based on some fair and valuable consideration." And in the case of *Preston* v. *Williams*, 81 Ill. 176, which was a suit by the children to have the deed of the father corrected, after stating the rule as announced in *Webb* v. *Alton Marine and Fire Ins. Co. supra*, the court said: "Upon the same principle it may be said that a court of equity might refuse its aid to rectify a mistake in a contract that is voluntary and without any consideration to support it, when a bill is brought against the party who executed the instrument." The above rule is further announced in *McCartney* v. *Ridgway*, 160 Ill. 129, and is supported by the unquestioned weight of authority, as the following will show: 14 Am. & Eng. Ency. of Law, (2d ed.) 1046; *Willey* v. *Hodge, supra; Stone* v. *King*, 84 Am. Dec. 557; *German Mutual Ins. Co.* v. *Grim, supra.*

It is further urged by appellant, that as the deed in question, according to the contention of appellee, was to convey the homestead of the donor and appellee, and as appellee did not join in the conveyance or in the release of the homestead, the conveyance for that reason is void. By section 1 of chapter 52 of our statutes the estate of homestead to the value of $1000 is created and excepted "from the laws of conveyance, descent and devise, except as hereinafter provided." (Hurd's Stat. 1899, p. 867.) By section 4 of the same act it is provided: "No release, waiver or conveyance of the estate so exempted, shall be valid, unless the same is in writing, subscribed by said householder and his or her wife or husband, if he or she have one, and acknowledged in the same manner as conveyances of real estate are required to be acknowledged, or possession is abandoned or given pursuant to the conveyance." In construing this act we have held that instead of being a mere exemption of an estate theretofore existing it is the creation of a new estate known as the estate of homestead, and where the homestead property does not exceed $1000 in value the homestead estate embraces the entire title and interest, and that a deed to property embracing the homestead in which the wife has not joined, leaves the homestead estate in the grantor precisely as though the deed had not been executed, and that such estate may be transferred by sufficient conveyance or it may descend to the heirs. (*Gray* v. *Schofield*, 175 Ill. 36.) In the same case we also held that if the grantee in a deed claim the benefit of the deed, under the above statute, upon the ground that the grantor had abandoned possession of the granted premises pursuant to the deed, it must be made to appear from the evidence that such abandonment was for the express purpose of giving effect to the deed, and not simply because another homestead had been secured to which the husband and wife transferred their home.

In the case at bar appellee did not join in the execution of the deed made by her husband, through which she claims title to the premises in question. The record is silent as to the value of the premises. It is not shown whether the land was worth more or less than $1000, and as the burden was upon appellee to bring herself within the provisions of the statute affecting such conveyance, she should have shown the value of the property. Nor is there any evidence in the record showing, or tending to show, an abandonment of the premises conveyed, for the purpose of giving effect to the conveyance, or "pursuant to the conveyance," as the statute requires. All the evidence that shows anything upon the subject or has any bearing in that direction shows that the property in question was the homestead at the time of the conveyance. It is so designated in the bill. It is so referred to by every witness who speaks in regard to it, and the attorney who drew the will tells of visiting the donor at his homestead in the country, after the making of the deed and before the making of the will. No witness testified as to where the residence of the donor was at the time of his death or at any time after making the deed in question, or that he ever changed his residence from the premises now in controversy to any other place. The only evidence in the record upon that subject is the recitals in the will, made in 1893, and in the codicil, made in 1898, in the first of which the testator speaks of his residence property in Leroy, Illinois, "on which I now live," and in the codicil speaks of the property in Leroy, Illinois, as "my present home." This being all the evidence, if this mere recital can be considered by the court as any evidence at all of the fact of the removal of the donor from the premises claimed by appellee, it is apparent it falls far short of such an abandonment as could give effect to the deed under the requirements of our statute.

There is not sufficient evidence in this record to warrant the decree rendered. In fact, we think the decree

is so contrary to the evidence that it is our duty to reverse it, and it is accordingly reversed and the cause remanded to the circuit court of McLean county for such further proceedings as equity and justice may require.

*Reversed and remanded.*