[Civ. No. 1788.    Third Appellate District.—February 4, 1918.]

## MARY FICKES et al., Appellants, v. W. S. BAKER et al., as Executors, etc., Respondents.

REFORMATION OF DEED—VOLUNTARY CONVEYANCE.—A voluntary conveyance will not be reformed so as to include land not referred to or conveyed therein unless all the parties interested in said land consent thereto.

ID.—REFORMATION AFTER DEATH OF GRANTOR—OMITTED LAND—RIGHTS OF HEIR NOT AFFECTED BY.—A voluntary conveyance reformed after the death of the grantor so as to include land omitted therefrom is not binding on an heir, so as to preclude him from asserting and maintaining his heirship by the method pointed out in section 1664 of the Code of Civil Procedure.

ID.—CONSENT OF STATE.—A voluntary conveyance cannot be reformed after the death of the grantor so as to include land omitted therefrom, without the consent of the state, even though there be no heirs, since the state has a contingent interest in the estate of one dying intestate.

ID.—CONSENT OF EXECUTOR—LACK OF AUTHORITY.—An executor of a will has no authority to consent to the reformation of a voluntary conveyance after the death of the grantor, so as to include land omitted therefrom.

APPEAL from a judgment of the Superior Court of Yolo County. Malcolm C. Glenn, Judge Presiding.

The facts are stated in the opinion of the court.

E. E. Gaddis, and L. Ernest Phillips, for Appellants.

A. G. Bailey, for Respondents.

BURNETT, J.—The action was brought for the reformation of a deed executed by the testator in his lifetime. It was found by the court that at the time of his death the de-

36 Cal. App.—9

ceased was the owner and in the possession of property described as lot No. 6 in block No. 10, in the town of Winters, county of Yolo, that he made no disposition of it by his will; that on the thirty-first day of July, 1912, said Cradwick executed a certain deed of conveyance to the plaintiffs, granting a certain lot of land contiguous to the parcel here in controversy; that ''said deed was by its express terms made, executed, and delivered by the grantor therein John Cradwick, for and in consideration of the love and affection which he had and bore unto the grantees therein named, and also for the better maintenance, support, protection, and livelihood of the grantees therein named, and said consideration was the sole consideration for the execution of said deed''; that said grantees were not blood relatives of deceased ''and so far as known, at the date of trial said deceased had no heirs at law; that prior to the time said deed was drafted said John Cradwick directed the scrivener to include in the said deed the said lot No. 6, in block 10, but said scrivener failed and neglected to do so; that at the time said deed to said lot No. 7 and a portion of said lot 8 was executed and delivered nothing was said by any of said parties or by said scrivener in reference to the omission of said lot 6 from said deed.''

It is further found ''That W. S. Baker and W. P. Womack, executors of the last will and testament of said John Cradwick, deceased, in open court at the trial of the issues involved in this proceeding consented to the granting of a decree directing them to amend and reform the deed hereinbefore described, so as to include lot 6 in block 10, in said town of Winters.'' The court concluded from the foregoing facts that the plaintiffs were not entitled to a reformation of said deed, and therefore directed judgment in favor of defendants for their costs. The appeal is from such judgment.

It is to be observed that there is no express finding that at the time of the execution of said deed the grantor intended to convey said lot, but the cause has been treated here by both parties as though such intention existed and we shall so consider it.

It is quite apparent that the judgment of the lower court must be affirmed. This follows from the rule recognized by all the authorities that a voluntary conveyance will not be reformed so as to include land not referred to or conveyed therein unless all the parties interested in said land consent

thereto. The rule and the reason underlying it are clearly stated in *Enos* v. *Stewart*, 138 Cal. 112, [70 Pac. 1005], from which we quote: "A court of equity interferes to correct a mistake in a written instrument only in furtherance of justice and to prevent fraud or some injustice. In this case, by refusing to correct the deed no fraud nor injustice is done to appellant. She has lost nothing because she paid no consideration for the deed. She has been deprived of nothing the law would otherwise give her. It is true the intention of the grantor is not carried out, but it would have been equally true if an attempt had been made to make a will and it had been defective in a vital part. The court could not reform a will nor make it so that it would comply with the law. In this case the defendant intended to convey the property but she did not do so."

In *Smith* v. *Smith*, 80 Ark. 458, [10 Ann. Cas. 522, 97 S. W. 439], it was held that the deed was not sufficient to convey the eighty-two and one-half acres of land defectively described; that it was a voluntary conveyance without a valuable consideration to support it, and that equity would not reform said deed, citing a long number of authorities. This case was affirmed in *Johnson* v. *Austen*, 86 Ark. 446, [111 S. W. 455], wherein it was held: "In the absence of evidence of fraud or undue influence a deed of gift from a wife to her husband cannot be reformed without the consent of all parties."

By the supreme court of Michigan, in *Tuthill* v. *Katz*, 174 Mich. 217, [140 N. W. 519], it was declared to be "a well-established rule that a court of equity will refuse its aid to rectify a mistake in a conveyance that is voluntary and without consideration unless all the parties consent."

In *Willey* v. *Hodge*, 104 Wis. 81, [76 Am. St. Rep. 852, 80 N. W. 75], it was declared: "There can be no doubt of the intention of the father to convey this tract of land to the plaintiff. His deed, however, fails to describe it. The rule is quite familiar that a defective deed may be treated in equity as an agreement to convey and performance enforced. But the rule is equally well understood that when it appears that the deed was voluntary, equity will not carry it into effect or reform it." But we forbear further citation, as we are referred to no contrary decisions.

It seems to be contended, however, that equity will with-hold relief after the death of the grantor only where there is an heir to succeed to the property and it is claimed that the converse of the proposition, namely, that where there are no heirs the court should correct the mistake at the instance of the grantees, is a sound principle of equity.

As to this contention, we may observe that there is no express finding that there was no heir, and it is quite apparent that if there be any heir to an estate he would not be precluded by such finding in this case from asserting and maintaining his heirship by the method pointed out in section 1664 of the Code of Civil Procedure. But waiving the foregoing considerations and admitting for the sake of argument that if all parties in interest consent, such deed may be reformed after the death of the grantor, it is quite apparent that there are other parties in interest besides the heir or heirs and the grantees. Whoever would succeed to the property under the laws of the state stands in the same *relation* to the grantor as far as reformation is concerned and to what he has failed to convey as would an heir. In fact, the heir—so called—is a party in interest only by virtue of the statute, and the same section of the code which provides for the succession by a relative to the decedent determines that the state has a contingent interest in the estate of one dying intestate. For said section 1386 of the Civil Code reads: ''When any person having title to any estate not otherwise limited by marriage contract dies without disposing thereof by will, it is succeeded to and must be distributed, . . . in the following manner: . . . 9. If the decedent leaves no husband, wife or kindred and there are no heirs to take his estate or any portion thereof under subdivision eight of this section, the same escheats to the state for the support of the common schools.''

In other words, the legal title to said lot No. 6 on the death of John Cradwick vested according to the order prescribed by said section 1386, and the interest of the one entitled to the same is not affected by the class or category to which he may belong.

The matter cannot be made plainer by argument, and it will not be disputed that the state has not consented to the reformation of said deed. It may be said also that the creditors, if any—and it does not appear that there was none—probably have such an interest that equity would not be jus-

tified in reforming said deed without their consent, but as to that we need not express any definite opinion.

There is some pretense that the executors represented the interested parties in expressing their willingness to have the deed reformed. Such position, however, cannot be maintained. We need not consider at length the duties and responsibilities of executors, as those matters have been often discussed in the decisions, and the provisions of the Code of Civil Procedure on the subject scarcely need elucidation. It is sufficient to say that they have no power to consent to such a decree, and if they attempt to do so it cannot affect the legal title to the property. They may compound with a creditor as provided by section 1588 of the Code of Civil Procedure, but that must be "with the approbation of the court, or a judge thereof." They may also be required to complete contracts for sale of real or personal property made by the decedent in his lifetime (Code Civ. Proc., sec. 1597), but this must be by direction of the court, and, of course, it must be in cases wherein the grantor if living could be compelled to execute the conveyance.

No one would contend that in a case like this where the conveyance was voluntary the grantor could be compelled to convey the land in controversy. Manifestly the executors stand in a relation no more favorable to the grantees.

We think there is no merit in the appeal, and the judgment is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.