[Civ. No. 4081.   Fourth Dist.   Apr. 3, 1951.]

FRANK REINA, Plaintiff and Appellant, v. ROSE ERAS-
SARRET, as Executrix, etc., et al., Defendants and Ap-
pellants.

West, Vizzard, Howden & Baker for Plaintiff and Appellant.

Johnston, Baker & Palmer for Defendants and Appellants.

BARNARD, P. J.—This is an action to set aside a gift deed and to quiet title to the property in the plaintiff.

The plaintiff and his wife, Lizzie Reina, owned certain properties as joint tenants. They were the parents of Samuel Reina, Josephine Reina, Rose Erassarret, Frances Argain and John L. Reina. On August 27, 1946, Lizzie Reina executed a deed of gift of her interest in these properties to these five children, and also made a will leaving to them any interest she might have in any and all property, including community property. The deed was promptly recorded. On September 30, 1946, Samuel Reina quitclaimed to his mother the property described in this deed of gift and on October 11, 1946, John L. Reina and Josephine Reina executed similar quitclaim deeds. On the same dates the plaintiff caused these quitclaim deeds to be recorded. On October 17, 1946, an action was filed in the name of Lizzie Reina against Rose Erassarret and Frances Argain seeking to recover the title conveyed to them by the gift deed, but Mrs. Reina did not swear to the complaint. On October 22, 1946, Rose Erassarret and Frances Argain conveyed to the law firm of Harvey, Johnston, Baker & Palmer a portion of their interest in the property described in the gift deed.

Lizzie Reina died testate on November 22, 1946, and on January 28, 1947, letters testamentary were issued to Rose

Erassarret, who has since acted as executrix. On February 24, 1947, on stipulation of the attorneys for the plaintiff Frank Reina and for the executrix, the action brought by Lizzie Reina on October 17, 1946, was dismissed.

On February 7, 1947, Frank Reina brought this action. The complaint alleged that the plaintiff and Lizzie Reina were the owners in joint tenancy of certain described properties, nearly the same as those described in the gift deed; that Rose Erassarret and Frances Argain had induced their mother to execute the gift deed by falsely and fraudulently representing to her that it did not convey any present interest in the properties but would take effect only after her death; that Lizzie Reina was then sick and feeble in mind and body, unable to read, and did not know the contents of the gift deed; that Rose Erassarret and Frances Argain made the same false representations to Josephine Reina and John L. Reina, as a result of which those defendants encouraged the mother to sign the gift deed; that after the gift deed was recorded Lizzie Reina discovered its import and demanded a reconveyance from the children; that Samuel, Josephine and John L. Reina executed quitclaim deeds back to her; and that Rose Erassarret and Frances Argain refused to do so. The plaintiff prayed for a cancellation of the gift deed and for a judgment declaring that the plaintiff and Lizzie Reina were the owners of these lands in joint tenancy at the time of her death, that her interest was terminated by her death, and that the plaintiff is the owner of all of the properties.

Samuel, Josephine and John L. Reina defaulted. The other defendants answered and filed a cross-complaint. At the first trial the court entered, in effect, a judgment on the pleadings in favor of the defendants. On appeal that judgment was reversed, this court holding that the plaintiff had such an interest in the subject matter as would entitle him to maintain the action. (*Reina* v. *Erassarret,* 90 Cal.App.2d 418 [203 P.2d 72].)

At the trial which followed the plaintiff abandoned any issue of mental incompetency on the part of Mrs. Reina. The court found in all respects in favor of the defendants finding, among other things, that on August 27, 1946, Lizzie Reina was in full possession of her faculties and fully competent to transact business, to make the deed of gift and to execute a will; that acting through Rose Erassarret she procured legal counsel and caused the gift deed to be prepared; that by this deed she intended to convey to her children all prop-

erties in which she had any interest, whether joint tenancy, community or otherwise; that through inadvertence and mistake certain properties were not included in the gift deed; that neither Rose Erassarret nor Frances Argain made any of the misrepresentations alleged in the complaint; that the deed of gift was read to Lizzie Reina; that when she signed and delivered it she knew its contents, meaning and effect; that she intended then and there to divest herself of all present right and interest in the properties; that she was not induced to execute the deed of gift by any false representations or importunities of her daughters; that Lizzie Reina caused the deed of gift to be recorded; that Samuel, Josephine and John L. Reina delivered quitclaim deeds to Lizzie Reina during her lifetime; that Lizzie Reina thereafter and her estate since her death has been the owner of the realty covered by these quitclaim deeds; that Lizzie Reina never demanded any reconveyance from Rose Erassarret and Frances Argain; that Frank Reina, acting for Lizzie Reina, did request such a reconveyance from Samuel, Josephine and John L. Reina; that the plaintiff, during the lifetime of Lizzie Reina, received for her the deeds of reconveyance from Samuel, Josephine and John L. Reina, caused the same to be recorded and thereby accepted the same; that the plaintiff is estopped from asserting that the estate of Lizzie Reina should be deprived of the property thus deeded to Lizzie Reina by Samuel, Josephine and John L. Reina, and is estopped from maintaining that Lizzie Reina was at the time of her death a joint tenant of the plaintiff; that the will of Lizzie Reina was admitted to probate and no appeal has been taken from that order; that the estate of Lizzie Reina is the owner of an undivided 30 per cent interest in the real property in question, being the portion reconveyed to Lizzie Reina by John L. Reina, Josephine and Samuel Reina; and that Rose Erassarret, Frances Argain and Harvey, Johnston, Baker & Palmer are the owners of a 20 per cent interest in the said lands. Judgment was entered against the plaintiff, but only partly in favor of the cross-complainants. Both sides have appealed.

The plaintiff has appealed from the judgment rendered against him on his complaint. He first contends that the evidence is not sufficient to support a number of the findings. Relying on portions of the evidence and suggested inferences therefrom, he contends that the evidence shows that when the gift deed was executed Mrs. Reina was old and infirm, and unable to read or write; that she did not have inde-

pendent advice; that a fiduciary relation existed between her and the grantees; that the grantees were active in procuring the instrument in question; that the execution of the gift was concealed from the plaintiff; and that there was no consideration for the gift deed. It is further argued that the burden of proving the absence of fraud or undue influence was on the defendants.

Without setting forth all of the evidence it appears that Mrs. Reina was in ill health when the deed was executed, that she realized she had not long to live, that she was unable to read or write other than to sign her name, and that she had had considerable business experience. Shortly before the deed was executed she was troubled because her husband was spending so much time away from home assisting "sisters" of his church; she told her husband that she was going to give her property to her children, since he would remarry when she died and "my children won't get a thing"; and she told two friends that she was going to "get some papers signed" at once as she wanted her children to have her property. Shortly before August 27, 1946, she told her daughters Josephine and Rose that she wanted to do this before her husband returned from an extended absence. At her request and in her presence one of them called a lawyer, and told him what was wanted. The lawyer asked whether it was joint tenancy or community property. The daughter inquired of the mother who said she thought it was joint tenancy but there might be some community property. The lawyer said it would be advisable to make a deed, and also a will. Mrs. Reina did not have the description of the properties and the lawyer advised that these could be obtained from the tax collectors where the properties were situated. At Mrs. Reina's request the daughters obtained the descriptions and Rose and John went to the lawyer's office. The deed and will were prepared and Rose took them home. The father was there, and the mother told Rose to put the papers away, and that she would sign them as soon as he went away again. A few days later, in the father's absence, Mrs. Reina said she wanted to execute the papers. Josephine read both papers to her mother, and Mrs. Reina said "That is good." She then directed her daughters to go and get a Mr. Boydstun, a real estate agent with whom the mother had had dealings, and a Mrs. Manning. Mr. Boydstun came, bringing his partner who was a notary. Mrs. Manning was also brought. The notary read the deed to Mrs. Reina before it was signed and explained its meaning

to her. Mr. Boydstun told Mrs. Reina just before she signed the deed that if she signed it the children could charge her rent or put her out of the house if they wanted to. Mrs. Reina replied ''This is just the way I want it.'' The will was also read to and signed by Mrs. Reina at the same time, Mrs. Manning signing as one of the witnesses. While Rose Erassarret and Frances Argain were present, neither took part in the proceedings there.

There is no evidence that Rose Erassarret or Frances Argain exerted any pressure at all upon their mother, or that either did anything in connection with the execution of these instruments except at the suggestion or direction of the mother. Most of the material facts, as found by the court, were testified to by several witnesses and their testimony, which was accepted by the court, clearly shows that Mrs. Reina knew exactly what she was doing on this occasion, that she fully understood the effect of the deed of gift, and that she fully intended at that time to make a present gift to her children of such interest as she had in these properties. Moreover, a few days after the deed of gift was executed and recorded the plaintiff asked his wife to sign a deed to one of the properties, which he had arranged to sell. She told him that she could not sign it because she had conveyed her interest to the children. The evidence also justifies the inference that the plaintiff was the prime mover in thereafter obtaining quitclaim deeds from three of the children, and in bringing suit against the other two.

So far as can be told from a reading of the record, it would be difficult to see how the court could have found to the contrary on this main issue. The evidence amply supports the material findings in this connection, and is sufficient regardless of where the burden of proof lay.

The only other point raised by the plaintiff is that the court erred in the admission and rejection of evidence. ■ The first objection relates to a letter written to Rose Erassarret on September 30, 1946, by the lawyer who drew the gift deed. It is argued that this was an offer of compromise and was inadmissible. This letter did not refer to a settlement with the plaintiff. Strictly speaking, it was not an offer of compromise although in connection with correcting the error in description in the deed it referred to a suggestion made by another attorney that a new deed be given, reserving a life estate to the mother. Part of the letter was material, there was no

jury, and any possible error could not be prejudicial. ■ It is next urged that the court erred in allowing the witness Boydstun to give his opinion and conclusion as to whether Mrs. Reina was acting of her own free will when she signed the gift deed. This witness merely answered a question as to the appearance and manner of Mrs. Reina at the time. The next assignment of error in this connection is immaterial and requires no comment. ■ Finally, it is argued that the court erred in refusing to permit the appellant to introduce evidence as to the value of the property attempted to be transferred by the gift deed. It was admitted throughout that there was no money consideration for the deed. If it be assumed that the value was in any way material, it sufficiently appeared in other evidence of the appraisal, in the estate proceeding, of an undivided 3/10 interest in the properties.

■ The appeal taken by the cross-complainants relates to a mistake in the description of a part of the property, as described in the gift deed. The descriptions were unknown to Mrs. Reina, as her husband had the papers, and at her request they were obtained from the tax collectors in the counties where the properties were situated. Because of an error in the descriptions thus obtained two portions of the property were left out of the gift deed. The parts left out consist of two parallel 7-foot strips running the full length of an improved property, the strips being about 18 feet apart, and one of these strips going through the middle of the house located upon the property.

The cross-complainants sought, in their first cause of action, to reform the gift deed by correcting this mistake in description, thus making the deed conform to the intention of the grantor therein. A second cause of action was to quiet their title as against the plaintiff.

With respect to the error in description the court found that Mr. and Mrs. Reina were, on August 27, 1946, the owners in joint tenancy of certain property as described in the findings; that when she executed the gift deed Mrs. Reina intended to include therein all property of any nature or description then owned by her, whether in joint tenancy or otherwise; that through errors in the descriptions furnished to her by the tax collectors' offices, which errors were unknown to her, the properties were incorrectly described in the gift deed; and that for this reason the deed of gift did not include all of the realty interests and properties owned by Mrs. Reina and which she believed and intended were included therein.

However, the court found, as one of its conclusions of law, that a decree should be entered denying the requested reformation of the deed of gift for the reason that there was no consideration for that deed, other than love and affection and except provision for the better maintenance, support and protection of the grantee children.

The cross-complainants have appealed from that part of the judgment which denied such a reformation of the gift deed. As the plaintiff states, the sole question on the cross-appeal is "whether or not, under the circumstances of the instant case, the court will reform a deed given for a consideration consisting solely of love and affection." The plaintiff relies on *Enos* v. *Stewart,* 138 Cal. 112 [70 P. 1005] and *Fickes* v. *Baker,* 36 Cal.App. 129 [171 P. 819]. It is argued that the reasoning of these cases is that equity will not interfere in favor of a volunteer to reform an instrument for which he gave no consideration; that having paid nothing the grantee should not be heard to complain; and that since the plaintiff originally owned an interest in the entire title to the land, equity should not permit him to be vexed by an action for reformation brought by grantees of his cotenant who gave no consideration for the grant.

As we read the cases cited, the governing principle is not the presence or absence of a money consideration but is whether or not one of the parties has equities which are superior to those of the other. In the Enos case both parties were heirs of the grantor, with equal equities, and the conveyance sought to be reformed covered an entirely different tract of land than the one intended to be conveyed.

It may well be questioned whether the doctrine of the cases cited should be so extended as to cover such a situation as here appears, where the reformation sought applies only with respect to an incidental mistake in describing land which was clearly intended to be conveyed, rather than to the substitution of an entirely different parcel. In the instant case the intention of the grantor was plain, the error was due to an incorrect description furnished her by others, and the omitted parts were included within the bounds of the property actually conveyed, being merely narrow strips which were obviously an integral part of the property being conveyed.

The joint tenancy here was broken; the plaintiff had received his half and his right thereto was protected by the judgment in this action; the wife by her will had prevented the plaintiff from inheriting her property; and he was no

longer an heir. The plaintiff had remarried, and it is only equitable that the children should receive the share the mother intended to give them. While it was held on the former appeal that the plaintiff had alleged a cause of action, he was unable to prove the issue he raised. The mother having terminated the joint tenancy by her free and voluntary act and deed, she had a right to give all of her interest to her children, and this she attempted to do. In equity and good conscience the plaintiff should not be permitted to prevent this, or to profit from this incidental error in description. To permit this to be done would result in tying up the title to a part of the property in a fantastic manner.

Under the unusual facts of this case we think the equities of the parties are not equal, and that the strict rule of the Enos case is not applicable here, the reasons for the rule being absent. In our opinion equity requires that the general rules for reformation of instruments, for the purpose of carrying out the clear intention of the parties, should be here applied.

That portion of the judgment which denied relief to the cross-complainants upon their first cause of action is reversed, with directions to the trial court to amend its conclusions of law and the judgment in accordance with the views herein expressed. In all other respects the judgment is affirmed. The cross-complainants to recover costs on appeal.

Griffin, J., and Mussell, J., concurred.