SARAH LEGATE, Appellant, *vs.* ROBBIE LEGATE, Appellee.

*Opinion filed February 25, 1911—Rehearing denied April 6, 1911.*

1. DEEDS—*equity will not reform deed made without considera-tion.* If a grantor attempts to make a deed without any valuable consideration and the conveyance is so imperfectly drawn as not to accomplish the grantor's purpose, a court of equity will not lend its aid to make the gift perfect by reforming the deed.

2. SAME—*when only question is whether there was a valuable consideration.* Where it is clear from the evidence under a bill to reform a deed that the grantor intended to include certain lots in his conveyance, which were omitted from the description in the deed through the mistake of the scrivener, the only legal question as to the right of the complainant to relief is whether there was a valuable consideration for the conveyance.

3. SAME—*when rendition of services by sister to brother is val-uable consideration.* Even though services rendered by one mem-ber of a family to another while residing together are presumed to be gratuitous, yet if a deed is executed to the member rendering such services, not as a gift to her by the grantor but to compen-sate her for the services rendered to the grantor and other mem-bers of the family, the deed, when executed, constitutes a contract for which there is a valuable consideration, and a court of equity may reform a clear mistake in the deed, even though there was no express contract for compensation before the deed was executed.

CARTWRIGHT, HAND and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Edgar county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

F. C. VANSELLAR, for appellant.

J. K. LAUHER, and F. W. DUNDAS, for appellee.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Edgar county dismissing a bill, for want of equity, filed in that court by Sarah Legate against Robbie Legate for the reformation of a deed executed by Israel Legate, a widower,

to the appellant. The theory of the bill is that Israel Legate contracted. in his lifetime, with appellant to convey to her certain real estate in consideration of services rendered and to be rendered, as housekeeper, for him. The court below, believing that the evidence of a contract was insufficient, dismissed the bill, and Sarah Legate has prosecuted an appeal.

The evidence shows that the appellant and Israel Legate were brother and sister. Robbie Legate, the appellee, is the only child and heir of Israel Legate. For about thirty years before his death Israel Legate lived at home with his mother and sister Sarah, and other members of the family. Their mother was very old and an invalid. Sarah did substantially all of the housework, such as cooking and washing and other household duties. About five months before his death Israel Legate became afflicted with cancer of the liver. He was able to be up until four or five weeks before his death. During his illness the appellant nursed him and prepared his meals and served them to him in his room. She was very kind to her brother as well as to the other members of the family. Israel Legate was worth about $15,000 in real estate and $1000 in personal property at the time of his death. A few days before his death Israel Legate asked his physician how long he thought he would live. The physician advised him that he could not live many days, and told him that if he had any business to arrange it would be well for him to have it attended to. In reply to this statement he said that his business was in good shape and he had nothing to arrange, except he wanted to give Sally (appellant) some town lots because she had always been good to him, or words to that effect. Israel Legate sent for Wiley Rogers, a notary public, to come over and make a conveyance to appellant. The notary came over and the old deeds to the lots were produced, and those containing the particular lots he desired to convey were separated from the others and handed to the notary, with the instruction to prepare a deed conveying those lots to appellant. The par-

ticular deeds given to the notary were known as the Yelton, Myers and Billie Watson deeds. These deeds contained a description of the lots which it is supposed Israel intended to convey. The notary took the deeds and went to his office and prepared a deed, but by an oversight or mistake on his part he failed to include all of the lots that were embraced in those deeds. He brought the deed back to Israel Legate for his signature. He asked the grantor if he should read the deed before the grantor signed it, and he said, "No, you need not read it if it is all right," and thereupon he signed it and acknowledged it and the notary took the deed back to his office and put the seal on it, and then, by direction, delivered it to appellant. Appellant went into the possession of the lots which she understood were described in the deed. Some time after the death of Israel Legate it was discovered that the lots were not all included in appellant's deed. Appellee, as sole heir of his father, brought an ejectment suit against the appellant and recovered a judgment. Thereupon appellant filed this bill for the reformation of the deed, seeking to have the omitted lots included within the description of her deed.

The evidence upon which appellant relies is very brief. Frank Legate, a brother of Israel, testified that he lived in the house with his mother, appellant and Israel prior to the time the deeds were made and resided there at the time his brother died, which was in 1906. He testified that his brother resided in the family and that appellant washed and cooked for him; that he never paid any board or grocery bills for himself or for the hands he employed; that appellant waited on him during his last illness; that at the time the deed was executed Israel sent him for the notary; that he was present and heard his brother tell the notary to make a deed to appellant for all of the lots lying north of the street that runs by the Fouts barn; that the witness got the old deeds and that his brother selected those containing the descriptions of the lots in question. He testified that

the notary took the deeds to his office and brought the old deeds and the one he had prepared back to the house. He testified that the deeds that contained the descriptions of the lots his brother intended to convey were those taken by the notary. The witness also testified that his brother told him to get the old deeds; that he was going to deed appellant the lots; that she had waited on him and he was going to pay her for it; that she had done more for him than anybody else; that he said that he had told Sally he was going to deed her "them lots." At another time the deceased told the witness he had given the lots to appellant, and that he thought the witness could afford to do the milking; that he said he had given the lots to Sally because she was not able to work and she would not have to work so hard. This witness testified that appellant had performed substantially all of the housework for the family for thirty years, and that the deceased had never paid her anything or furnished any provisions for the house.

In addition to the lots in question the deed conveyed to appellant twenty-eight acres of land, which is valued at $90 per acre. The evidence shows that the lots in question were worth about $60 each. The evidence also shows that the deceased gave appellant about $250 in personal property.

Wiley Rogers, the notary who made the deed, testified to substantially the same state of facts detailed by Frank Legate. He testified that he was instructed to include the lots in the Yelton deed in the conveyance to appellant, and that in some way the Yelton deed became separated in his office from the others and that he omitted entirely to include those lots; that he supposed he had included them at the time the deed was made. This witness testified that the deceased said he intended to give appellant this property because he wanted to pay her for her services, and that she was weak and he wanted to provide for her.

Etta Clabaugh testified that she owned one-half interest in one of the lots that was intended to be conveyed to

appellant, and that her uncle, Israel Legate, bought her half interest and paid her $30 for it and directed her to make the deed to appellant. She testified that the deceased said to her: "You have a half lot down there; I have given Sally those lots down there and want to buy that half lot for her." A deed for the half interest was made by Mrs. Clabaugh to appellant and she received the consideration from Israel Legate. This was about a week before the death of Israel Legate. This witness also testified that her uncle said he was giving the lots to the appellant because she was not well and had cooked and washed for him and mended his clothes.

Dr. R. L. Scott, the physician who attended Israel Legate in his last illness, testified that the deceased told him that he wanted to give appellant certain lots but did not tell him which particular lots he desired to convey to her.

Appellant, being incompetent, did not testify. The foregoing is all the evidence introduced on behalf of appellant. The only evidence introduced by appellee was the testimony of three witnesses who testified that the witness Rogers had made statements to them in regard to what was said between him and Israel Legate on the day that the deed was made, which were at variance with his statements on the trial. There was no other testimony introduced.

The testimony convinces us that it was the intention of Israel Legate to convey to appellant the lots embraced in the Yelton deed in addition to the other real estate which he did, in fact, convey, and that the lots were left out of the deed through a mistake of the scrivener. The only legal question arising under these facts is whether there was a valuable consideration for the conveyance which would entitle the appellant to have the mistake corrected by a court of equity. If the grantor attempted to make a deed to appellant without any valuable consideration and such conveyance was so imperfectly executed as to not accomplish his purpose, a court of equity will not lend its aid to make the

gift perfect by reforming the deed. *Strayer* v. *Dickerson,* 205 Ill. 257.

Appellee contends, and the court below sustained his contention, that the deed sought to be reformed was voluntary and intended merely as a gratuity because the evidence does not show that there was an antecedent contract to pay for the services rendered to the grantor, and that under the existing circumstances no contract would be implied by law. · This court has often held that where members of a family reside together and some of them render services for the others, the presumption of law is, arising from the relation, that such services are rendered gratuitously, and that no recovery can be had for such services without proving an express contract or circumstances from which the law would imply a contract. *Miller* v. *Miller,* 16 Ill. 296; *Brush* v. *Blanchard,* 18 id. 46; *Faloon* v. *McIntyre,* 118 id. 292; *Collar* v. *Patterson,* 137 id. 403; *Finch* v. *Green,* 225 id. 304.

In the case last above cited the facts were very similar to those in the case at bar. In that case there was an attempt to convey land to a member of the family who had rendered valuable services to the grantor during a long period of serious illness. There was no evidence of a prior express contract to pay for such services. In discussing that question, this court, on page 312, said: "The evidence, however, justifies an inference of an express contract between the parties when the will was made, or certainly at the time of the execution of the deed. The deed was executed in the presence of appellant and his wife, and it is clear that it was made in consideration of the services rendered and to be rendered and the care and trouble which the grantor had caused to his son and wife. The services rendered were valuable, and at least after the execution of the deed were not rendered gratuitously but with an understanding that the land was to be compensation for them. The services were of such a nature that they could scarcely

be measured in money, and it was entirely competent for David Finch to place such a value upon them as he saw fit. His estimate of the value of such services would not be disturbed if the court should differ with him in judgment, nor would the court enter into an inquiry as to the adequacy of the consideration fixed by the parties themselves."

Under the evidence in this case it is clear that Israel Legate was not attempting to bestow a mere gift upon appellant but that he was seeking to compensate her for the valuable services she had rendered to him and to the family. Whether there had been any previous express contract or not, when the deed was executed it constituted a contract, and was, as we have seen, based upon a valuable consideration. This is all that the law requires in order to warrant a court of equity in reforming a contract. Had there been no attempt to execute the deed, a bill for specific performance would stand upon a different footing from one to reform an executed contract. Appellant was entitled to a reformation of this deed.

The decree of the circuit court of Edgar county is reversed and the cause remanded to that court, with direction to enter a decree in accordance with the prayer of the bill.

<em>Reversed and remanded, with directions.</em>

CARTWRIGHT, HAND and DUNN, JJ., dissenting:

The conveyance sought to be reformed in this case was a voluntary one, and a court of equity had no power to reform such conveyance. (*McCartney* v. *Ridgway*, 160 Ill. 129; *Strayer* v. *Dickerson*, 205 id. 257; *Finch* v. *Green*, 225 id. 304.) There was no legal consideration moving from the grantee to the grantor, and a moral consideration was not sufficient. (*Finch* v. *Green, supra.*) The *Finch case*, the authority upon which the majority opinion rests, is not like the case at bar, and furnishes no support for the position that the deed from Israel Legate to Sarah Legate can rightfully be reformed.