(No. 18608.—

GEORGE NEGLEY *et al.* Defendants in Error, *vs.* BERTHA INGLEMAN *et al.* Plaintiffs in Error.

*Opinion filed April 20, 1929—Rehearing denied June 5, 1929.*

GREEN & PALMER, and H. G. MORRIS, (GEORGE E. MARTIN, and ORIS BARTH, of counsel,) for plaintiffs in error.

R. S. ROWLAND, and JOHN LYNCH, for defendants in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

Defendants in error, George, Adam and Daniel Negley, who are sons of John and Margaretha Negley, filed their bill in the circuit court of Richland county against

plaintiffs in error, who are the grandchildren and great-grandchildren of John Negley and wife, to correct an error in the description of land in a deed to defendants in error executed on November 1, 1894, by John Negley and wife. An answer was filed to the bill denying that defendants in error were entitled to the relief prayed. A cross-bill was filed, in which plaintiffs in error alleged that prior to November 1, 1894, and since that time, defendants in error sustained a fiduciary relation to their parents; that while sustaining such relation they secured from their parents deeds to all of the lands owned by the parents; that the deeds were secured by fraud and undue influence at a time when John Negley did not have the mental capacity to execute the deeds; that in addition to the deeds defendants in error secured control of all of the business affairs of their parents and finally came into possession of all of their estate, both real and personal, to the exclusion of all of the other heirs; that there has been no administration upon the estate of either parent, and that defendants in error claim the parents died without any estate. The cross-bill prayed that the deeds be set aside; that there be a partition of all of the lands which the parents had owned; that an accounting be taken of the lands, profits and personal estate, and that the entire estate be marshaled and the share of defendants in error be charged with whatever they had received out of the estate to the exclusion of the other heirs. Upon issue being joined the evidence was heard by the chancellor, a decree was entered as prayed in the original bill, the cross-bill was dismissed for want of equity, and a writ of error has been prosecuted from this court to review the decree.

John Negley died intestate in Richland county on July 6, 1913, his wife died intestate on February 27, 1909, and there was no administration on either estate. They had three sons, who are the defendants in error, and two daughters, Sarah and Josephine. In 1882 Sarah married Joseph

Morgan. She died on October 15, 1890, leaving three daughters, who are married and are plaintiffs in error in this case. In 1883 Josephine married John Hemrich. She had nine children, all of whom are living except one daughter, who died leaving five children. Josephine died in 1901. After the two daughters married they left the home of their parents and lived on farms not far distant. The evidence on behalf of defendants in error is, that in the fall of 1884 John Negley borrowed money and purchased 80 acres of land. He deeded 40 acres to his daughter Josephine and 40 acres to her husband, with the agreement that Josephine and her husband pay to Sarah $600; that the father gave to each daughter certain livestock, farm implements and household furniture, of the value of about $400, making a total gift to each daughter of about $1000. The testimony of Hemrich is that each of the defendants in error was away from the home of their father for several years at different times and the daughters worked on the farm. He testified that he bought 80 acres from the father for $1200; that $600 of this amount was paid to Sarah, and this, with the 40 acres to Josephine, was all the property the daughters received, except certain household furniture, a cow, a couple of sheep, and possibly some other articles.

The evidence on behalf of defendants in error shows that John Negley and his wife in 1884 owned 220 acres of land in Richland and Clay counties, worth from $20 to $30 per acre, and they owed $3600; that the father wanted to retire from the active management of his farm land and he turned it over to his sons; that a verbal contract was entered into whereby defendants in error assumed the active management of the farms. From the profits they paid the $3600 which the father owed and they purchased other land. On November 1, 1894, the father owned 680 acres of land in the two counties, and on that day he and his wife executed to defendants in error three deeds. The

first deed recited a consideration of $2000, it conveyed 360 acres of land in Richland county, and was recorded March 23, 1901. The second recited a consideration of $1500, it conveyed 80 acres of land in Clay county, and was recorded December 22, 1894. The third recited a consideration of $3600, it conveyed 240 acres of land in Clay county, and was recorded December 22, 1894. Each deed contained a reservation that the grantors were to have the use and control of the land as long as they lived. Defendants in error claim that after November 1, 1894, their father turned over to them all of his personal estate, and thereafter they operated the farms, bought and sold stock, bought land, borrowed and loaned money, and paid taxes on the land for over forty years. After the death of their father and mother defendants in error continued in undisputed possession of the land with no adverse claim of right or title from anyone. In 1925 they discovered that the deed of November 1, 1894, first above set out, described 160 acres of land in Richland county as being in section 36 whereas it was in section 31, and as to the remainder of the land in that deed the description omitted the number of the township in which the land was located. Immediately upon the discovery of the errors defendants in error filed the bill in this case.

As grounds for reversal it is urged that defendants in error occupied a fiduciary relation to their parents; that the deeds were obtained by fraud and undue influence at a time when the father was mentally incapable of executing the deeds; that the deeds were without consideration; that equity will not reform a deed of voluntary settlement; that all of the deeds should be set aside, and that defendants in error should be required to account for all of the property of which the parents died seized.

The term "fiduciary relation" is a broad one. It exists in all cases in which influence has been acquired and abused and confidence has been reposed and betrayed. The origin

of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist wherever one trusts in and relies upon another. (*Beach* v. *Wilton,* 244 Ill. 413; *Mayrand* v. *Mayrand,* 194 id. 45.) Even though a fiduciary relation exists, a deed is nevertheless valid if it is executed with full knowledge of its nature and effect and through the deliberate and voluntary desire of the grantor. (*Pillsbury* v. *Bruns,* 301 Ill. 578; *Valbert* v. *Valbert,* 282 id. 415.) The existence of a fiduciary relation does not render a conveyance void unless by reason of the relation undue advantage is taken of the grantor. (*Lang* v. *Lang,* 284 Ill. 148.) Where the deed is the voluntary act of the grantor, with full knowledge of its nature and effect, and is in accordance with the grantor's desire and purpose, the existence of a fiduciary relation does not render the conveyance void. (*Allen* v. *McGill,* 311 Ill. 170; *Winkelman* v. *Winkelman,* 307 id. 249; *Roche* v. *Roche,* 286 id. 336.) The intimate relationship of persons does not prevent or forbid the right to deal or engage in contractual relations. All of the cases where contracts have been nullified are based upon a fiduciary relation where fraud, undue influence or circumvention entered into the transaction. The mere fact that a child lives with its parents in accordance with their desire and plan does not, alone and of itself, create a legal fiction that will defeat their solemn contracts which have been executed for a long time and are perfectly satisfactory to all parties, nor will it nullify their deeds that have been in force for many years without concealment and fraud.

In this case there is no evidence of any fiduciary relation prior to 1884. From 1884 to 1894 defendants in error operated the lands belonging to their parents. This was by virtue of a verbal contract with the father, who on account of his advanced age did not care to assume the burden of such operation. The farms were operated for

ten years with the apparent understanding that they were to become the property of defendants in error as a part of their share of the estate of the parents. The parents had given to their daughters what they considered was their share of the estate. After the daughters left home and were concerned with their own affairs, defendants in error remained on the farms and operated them for their own benefit and for the benefit of their parents. There is no evidence that in these dealings they overreached their parents in securing these deeds, or that the arrangement was made even at the suggestion of defendants in error. Several witnesses testified that the father told them what he had done and his reasons for so doing. The evidence was not sufficient to set aside the deeds on the ground that a fiduciary relation was abused.

The basis of the alleged mental incompetency of John Negley to execute these deeds is that he was raised in the Roman Catholic church; that he renounced the Catholic religion and joined the Masonic order; that he was suspended from the order for non-payment of dues but afterwards on one occasion attended a meeting of his lodge, and that he changed his religious belief and became a disbeliever in the Deity. One witness testified for plaintiffs in error that Negley was unbalanced in his religion, but the witness did not know whether he was capable of making a deed. Another witness testified that something was wrong with his mind, and he was incapable of transacting ordinary business, making deeds, mortgages or borrowing money. Five witnesses testified on behalf of defendants in error who were neighbors, friends, and the family physician. They testified that Negley had the average mentality of one of his age and was perfectly sound in mind. One of plaintiffs in error testified that her grandmother was the boss of the family and her grandfather did exactly what she told him to do. If there was any undue influence it apparently came from the grandmother rather than from

defendants in error. The evidence does not sustain the contention that Negley was mentally incapable of making these deeds.

In the original bill it is alleged that defendants in error paid $2000 for the land in Richland county. It is insisted that while the deed recited a payment of $2000 there was no evidence that any sum was paid; and that there was no competent evidence that the $3600 which it was claimed the father owed at the time the deeds were executed was paid by defendants in error out of their own funds. Under certain circumstances evidence may be received to explain or qualify a consideration recited in a deed, but the general rule is that evidence is not admissible to impeach the consideration stated for the purpose of destroying the deed. (*Hagen* v. *Lehmann,* 317 Ill. 227; *Fleming* v. *Reheis,* 275 id. 132; *Russell* v. *Robbins,* 247 id. 510; *Redmond* v. *Cass,* 226 id. 120.) There was evidence tending to show that a debt of $3600 of the father was paid, the deed recited a consideration of $2000, and defendants in error took care of their father and mother until their death. The evidence showed a consideration for the deeds.

It is insisted that equity will not reform a deed of voluntary settlement. The rule is that equity will not decree the specific execution of a contract unless it is based on some fair and valuable consideration. (*Strayer* v. *Dickerson,* 205 Ill. 257.) It will not aid a mere volunteer to carry into effect an imperfect gift or conveyance, but a voluntary trust or conveyance based upon a meritorious consideration may be enforced in equity. (*McCartney* v. *Ridgway,* 160 Ill. 129; *Preston* v. *Williams,* 81 id. 176.) The consideration had its inception in this case ten years before the deeds were executed, and during those years the consideration was being carried out in fulfillment of the understanding and desire of all the parties directly interested. The deeds were not voluntary conveyances in the

generally accepted sense in which that word is used. They were for a consideration, and equity had jurisdiction to reform the errors in the description of the land.

It is insisted that there is no evidence as to the exact terms of the contract under which this land was conveyed and nothing to show the description of the land in controversy. The evidence shows that at the time these deeds were executed John Negley owned 680 acres of land and that he wanted to convey all of it to his sons. He owned certain land in section 31 in Richland county but did not own any land in section 36. The township was omitted from the description of the other land. There can be no question as to the intention of the grantor as to the land which he intended to convey. It was all the land which he owned in both counties. The grantor told numerous witnesses after the execution of the deeds and prior to his death that he had conveyed this land to his sons, and other conditions of the contract were stated by him.

Complaint is made that defendants in error were not competent witnesses and were permitted to testify. They were competent to testify to transactions subsequent to the death of their parents, and most of their evidence was limited to that period. The hearing was before the chancellor, and there was sufficient competent evidence to sustain the decree even though some incompetent evidence may have been admitted.

We find no reversible error, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*