(No. 25424.—

JOSEPHINE A. MARVIN, Appellant, vs. ELSIE E. KELSEY, Appellee.

*Opinion filed April 10, 1940—Rehearing denied June 5, 1940.*

GLEN J. CAMERON, SAMUEL M. FRIEDLANDER, and GEORGE W. HUNT, for appellant.

RILEY & RILEY, and BAKER & BAKER, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

This is a direct appeal from a decree of the circuit court of Woodford county dismissing appellant's bill for partition for want of equity, and reforming a deed as prayed in appellee's cross-bill. The suit was filed August 22, 1931, by appellant, Josephine Marvin, to partition the southeast quarter of the northwest quarter of section 9, township 27 north, range 2 east of the third principal meridian in Woodford county. It was alleged that Christian H. Ruvenacht, the father of the parties in interest, had been seized of

this forty-acre tract at his death on April 26, 1925, and that it had descended to Josephine Marvin and her sister, Elsie E. Kelsey, as his heirs-at-law. By her answer and cross-bill, appellee, Elsie E. Kelsey, represented that she had owned the above described land since October 4, 1921, by virtue of a warranty deed to her from Christian Ruvenacht. She alleged that the deed was made in order to complete a division of the property between his two children, but that, through a mistake of the scrivener who prepared the deed, the premises were described as the southwest instead of the southeast quarter of the northwest quarter of section 9 above, which latter was the land her father agreed to convey to her. She prayed that the deed be reformed to describe the premises intended to be conveyed.

Before February 20, 1917, Christian H. Ruvenacht owned 160 acres of land in section 9, consisting of the south half of the northwest quarter, and the north half of the southwest quarter of the section. On that day he made a warranty deed to the northeast quarter of the southwest quarter to appellee and her husband, Walter Kelsey, jointly, for a consideration of $10,000, which Christian used to pay an obligation as surety for Josephine Marvin and her husband, Arthur Marvin. On the same day he conveyed the southwest quarter of the northwest quarter to appellee and her husband, jointly, for a consideration of one dollar and love and affection. On October 4, 1921, Christian Ruvenacht conveyed the northwest quarter of the southwest quarter to his brother, John Ruvenacht, by warranty deed in which he reserved a life estate. John Ruvenacht had been compelled to pay notes in excess of $13,000 which he had signed as surety for the Marvins, and Christian gave him this forty acres of land. At the same time Christian executed the deed sought to be reformed. After giving his brother, John, the forty acres, Christian owned only the southeast quarter of the northwest quarter, and it clearly appears that he did intend to convey this forty to Elsie

Kelsey on October 4, 1921, instead of one he had already conveyed to her.

Appellant contends the deed was to a volunteer,—that is a deed of gift,—and hence it cannot be reformed in equity. She relies on *Stanforth* v. *Bailey*, 344 Ill. 38, *Finch* v. *Green*, 225 id. 304, and *Strayer* v. *Dickerson*, 205 id. 257. Appellee concedes that equity will not reform a purely voluntary conveyance, but she insists that reformation may be had where the conveyance is supported by a meritorious consideration. This court has said that it will reform conveyances based upon meritorious consideration, (*Strayer* v. *Dickerson, supra; Negley* v. *Ingleman*, 335 Ill. 52,) but we have never held that the parent's duty to support his child or the love and affection existing between them furnished a meritorious consideration so as to warrant reformation of mistakes in deeds from parent to child, as contended by appellee. Appellee relies upon statements from Pomeroy's Eq. Jur. (4th ed.) sec. 588, Adams Equity (3rd American ed.) sec. 97, Bouvier's Law Dict., and *Powell* v. *Morrissey*, 98 N. C. 426, in support of her contention that love and affection, or the duty of maintaining children, furnishes a meritorious consideration which warrants equity in reforming deeds from parents or from persons standing in *loco parentis*. We find no support for this view in our decisions. In *Strayer* v. *Dickerson, supra*, a wife had given money to her husband, which legally belonged to him, since at that time a wife had no right to a separate personal estate. We refused to reform a deed from him to her, and said that to constitute a meritorious consideration the moral obligation must have at some antecedent time been a legal one. In *Henry* v. *Henry*, 215 Ill. 205, we refused to reform a conveyance made without valuable consideration from the grantor to one of her two sons. In *Finch* v. *Green, supra*, we reformed a deed from father to son, but there was convincing proof that the deed was given to pay the son and his wife for personal services rendered to the

grantor. In other words, a valuable consideration was established. *Negley* v. *Ingleman, supra,* relied on by appellee, is similar to *Finch* v. *Green, supra.* The grantor's sons had managed his farms for years under a verbal contract and had paid off a mortgage of $3600. In addition, they had bought more land for him, had cared for him until his death and the deed to the sons recited a consideration of $2000. We held they were not volunteers. In *Legate* v. *Legate,* 249 Ill. 359, we reformed a deed from the grantor to his sister, who had acted as his housekeeper for years. The deed had been made shortly before the grantor's death and it was expressly held not to be one of gift. The majority held there was a contract proved and that the services furnished a valuable consideration, but three judges dissented because they considered there was no proof of legal consideration. It is thus apparent that, in Illinois, something more than love and affection, or the relation of parent and child, is required to give equity jurisdiction to reform a deed to a volunteer.

Was there, then, a valuable consideration for the deed before us? Appellee insists that the deed was given as a part of one general transaction between Christian Ruvenacht, John Ruvenacht, Walter Kelsey, herself, and the Marvins. The evidence in the record does not substantiate this theory or prove the allegations of the cross-bill. The burden of proof as to the cross-bill was upon appellee. (*Strayer* v. *Dickerson, supra.*) The parties to the deed and the notary who acknowledge it are dead. Although a mistake was proved it does not appear who the scrivener was, what directions were given him, or that he failed to follow them. For all that appears the deed was written as ordered, and the mistake could have been that of the grantor in giving instructions. There is no doubt that Christian Ruvenacht intended to convey the land here involved to appellee to equalize the division of his land among his children, but this intention could be best effected by a voluntary settlement. If he had sold the land to appellee,

he could scarcely have intended an equal distribution of property to her as purchaser. From all that appears, Christian sold forty acres to Walter Kelsey in 1917 so he could obtain $10,000 to pay his obligations as surety for appellant and her husband. To assure appellee of receiving her share of his estate he conveyed another forty acres to her and her husband, jointly. The latter conveyance was not conditioned and did not depend on the first. If the sale had been made to a stranger, it could be assumed that he would have made a deed to appellee of another forty, so as to equalize the distribution of his estate, since the purchase money would likewise have gone to pay debts of appellant and her husband. In 1921, when he deeded another forty acres to his brother John, because John had paid other debts of appellant, he meant to continue with his plan of giving each daughter an equal share of his estate. This would have given each daughter the benefit of one-half of his land. Walter Kelsey orally agreed to buy the tract deeded to John upon Christian's death for $10,000 and later bought it, but that does not even tend to prove that the deed here involved was made in consideration for this promise. The land deeded to John was valued by Christian at $300 per acre, and Kelsey naturally considered it advantageous to purchase the land for $10,000. The deed here involved was intended only to give appellee her share of the property, and neither she nor her husband gave any consideration for it. It is not contended appellee agreed to take care of her father or did any work for him in return for the land. The evidence shows only a voluntary conveyance which could not be reformed in equity, and because of the interval of time between the delivery of the deeds, the family settlement rule does not apply.

The decree is reversed and the cause is remanded, with directions to dismiss the cross-bill for want of equity, and to enter a decree for partition as prayed by appellant's bill.

*Reversed and remanded, with directions.*