(No. 31156.— )

MINNIE REINBERG, Appellee, *vs.* LAURA HEIBY *et al.*— (LAURA HEIBY, Appellant.)

*Opinion filed November 22, 1949.*

PAUL W. SCHROEDER, of Chicago, (WARD H. HARRIS, of counsel,) for appellant.

CUMMINGS & WYMAN, of Chicago, (AUSTIN L. WYMAN, HAROLD ENGSTROM, and K. W. TEUTHORN, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

The plaintiff, Minnie Reinberg, brought an action in the superior court of Cook County against the defendants, Laura Heiby and George F. Hunter, as trustee, seeking

reformation of a trust agreement and two deeds to conform to the intention and understanding of the donor, John Jarmuth, deceased. Defendants interposed separate answers denying that plaintiff was entitled to the relief sought. The cause was referred to a master in chancery who heard the evidence and recommended the entry of a decree in favor of plaintiff. Objections of defendant Laura Heiby to the master's report were ordered to stand as exceptions. A decree was entered overruling the exceptions and adjudging that the trust agreement and the deed to defendant Heiby be reformed, and that Hunter, as trustee, execute and deliver to plaintiff a new deed. Laura Heiby, hereafter referred to as defendant, prosecutes this appeal. A freehold is necessarily involved.

Plaintiff and defendant are sisters. Prior to 1937, their father, John Jarmuth, owned approximately twenty-four acres of land in the village of Niles Center, now Skokie, in Cook County. The land, although contiguous, had been acquired as two separate tracts. Of these, one tract, containing about four acres, lies west of Carpenter Road. The other tract, containing approximately twenty acres, abuts on Touhy Avenue. In July, 1937, Jarmuth engaged Bernard F. Knauer, a licensed public surveyor of this State, to make a survey of the land and divide the twenty-four acres into two equal shares for the reason he had two daughters whom he desired to share his land equally. Knauer took the legal description furnished by Jarmuth, compared it with the records in the office of the recorder of deeds of Cook County, made a survey and prepared a plat of survey dividing the property into two tracts, each containing approximately twelve acres. Knauer devised or created legal descriptions for the two tracts of twelve acres each and designated them "Tract A" and "Tract B."

Thereafter, Jarmuth consulted Edward LeVine, an attorney, with respect to disposing of his real estate so as to obviate probate proceedings. LeVine suggested the crea-

tion of a trust to accomplish this purpose. Conferences and consultations followed. Jarmuth gave LeVine a blueprint copy of the plat of survey prepared by Knauer, pointing out that the property had been divided into two approximately equal parcels, designated "A" and "B" on the survey, adding that he wished his property to be divided between his two daughters. LeVine asked for and was given documents of title to the property showing how it had been originally acquired. He ordered and obtained opinions of title covering the tracts originally acquired by Jarmuth.

In November or December, 1937, a family gathering in Jarmuth's home considered the division of the property surveyed. Jarmuth, his wife, plaintiff and her husband, and defendant and her husband were present. Jarmuth told his daughters he wanted to divide the land in controversy equally between them. He produced three slips of paper marked "A," "B," and "BLANK," and conducted a drawing. At their father's request, each of the daughters drew a slip. Defendant drew the slip designated "A." Plaintiff drew the slip bearing the legend "BLANK," whereupon Jarmuth gave her the third slip marked "B." He then showed them the plat of survey prepared by Knauer and explained that "A" was the Touhy Avenue property and "B," the Carpenter Road property.

On January 29, 1938, LeVine prepared a deed in trust from Jarmuth and his wife to George F. Hunter, trustee, conveying to him the twenty-four acres, describing the property in accordance with the descriptions used at the time it was acquired by Jarmuth. This instrument designated the original tract of four acres as "Tract B" and the original tract of twenty acres as "Tract A." The deed in trust was caused to be recorded. At the same time the deed in trust was prepared, LeVine also prepared a trust agreement between Jarmuth and Hunter reciting that the trustee had taken title to the four-acre tract as acquired by Jarmuth and referred to it as "Tract B" and to the twenty-

acre tract and referred to it as "Tract A." The trust agreement provided, further, that, upon Jarmuth's death, the trustee should convey the title to "Tract A" to defendant and title to "Tract B" to plaintiff. Plaintiff and defendant signed the trust agreement as beneficiaries and each was given a copy.

The designations of the four-acre tract and the twenty-acre tract, as acquired originally by Jarmuth as "Tract B" and "Tract A," respectively, were contrary to the instructions given by Jarmuth to his attorney, LeVine. These instructions were, instead, to designate tracts "A" and "B" conformably to the survey prepared by Knauer. LeVine testified that he was at a loss to say how the mistake occurred, saying "The survey was supposed to designate the description of the property. The mistake in the legal description, I must admit, was my own and the only thing that I can account for at the present time is the fact that the legals, as designated in the trust agreement, correspond exactly to the legals after the title was taken on the two separate instruments and subsequently conveyed into John Jarmuth." In short, an inadvertent mistake was made by LeVine in the capacity of scrivener.

Jarmuth died on June 8, 1943, and, thereafter, Hunter caused trustee's deeds to be prepared and delivered to plaintiff and defendant. The deed to defendant covered the tract of twenty acres described as "Tract A" in the trust agreement and the deed to plaintiff described the four acres designated as "Tract B" in the trust agreement. The trustee's deed to defendant has since been placed of record. Plaintiff did not cause the deed to her to be recorded.

By her amended complaint, the plaintiff, Minnie Reinberg, alleged that, by mistake of the scrivener and contrary to the expressed intention of Jarmuth, the division of the property into tracts "A" and "B" was incorrectly made; that the intention of her father, the donor, at the time the trust agreement was executed, was that the tracts "A" and

"B," described and referred to in the trust agreement, should be legally described as set forth in the plat of survey made by Knauer and, specifically, that each of the two tracts should contain approximately twelve acres; that she, plaintiff, did not know an error had been made in the trust agreement and did not learn that the property had not been equally divided until delivery of the trustee's deed to her; that the legal title to the property described in the trustee's deed to defendant as "Tract A" is now vested in her by virtue of this deed, and that equity requires the trust agreement and the two deeds from the trustee to defendant and herself be reformed and corrected to conform to the intention and understanding of the donor.

The chancellor found that the equities were with plaintiff; that the reformation sought by her was not against the interest of the grantor or those claiming through and under him as heirs, devisees, purchasers, creditors or subsequent grantees but, on the contrary, was in the interest of the grantor in seeking to carry out his true intention, as set forth in the trust agreement he made for the benefit of both plaintiff and defendant who, as volunteers, were claiming under this same instrument; that the mistake sought to be reformed by plaintiff was a mutual mistake of the grantor and plaintiff and defendant, the donee beneficiaries, at the time the trust agreement was executed as a family settlement, and that "under either such circumstances" reformation should be granted. Accordingly, the decree ordered that the trust agreement and the legal descriptions therein be reformed and corrected; that the trustee's deed to defendant be reformed and corrected so that the legal description of the property conveyed thereby conforms to the intention of the grantor, and that the trustee execute and deliver to plaintiff a new deed conveying to her approximately twelve acres, conformably to the legal description contained in Knauer's plat of survey. This appeal followed.

It does not appear that this court has considered the question of the right of a donee beneficiary in a purely voluntary conveyance to maintain a successful action against a co-beneficiary to reform the instrument for a mistake of the scrivener where the donor is dead and his title to the property has been completely extinguished. To obtain a reversal of the decree of the superior court, defendant contends that a donee beneficiary in a voluntary trust agreement cannot maintain an action against a co-donee beneficiary to reform a mistake of the scrivener after the death of the donor where the beneficiaries are heirs, grantees or devisees of the donor. To sustain the decree, plaintiff maintains that, in equity, reformation of a purely voluntary conveyance may be granted as between volunteers after death of the grantor, where, as here, volunteers claim under the same conveyance and the grantor has no interest in the controversy. The narrow question thus presented is whether equity will reform the trust agreement of January 29, 1938, in aid of one volunteer, the plaintiff, against another volunteer, the defendant, claiming under the same instrument where the grantor has no interest in the controversy.

Defendant places reliance upon *Marvin v. Kelsey*, 373 Ill. 589; *Stanforth v. Bailey*, 344 Ill. 38; *Henry v. Henry*, 215 Ill. 205; *Strayer v. Dickerson*, 205 Ill. 257, and numerous decisions of courts of review in other jurisdictions, none of which sustain her position. In each of the four Illinois cases, a court of equity refused to grant its aid to a grantee of a voluntary conveyance seeking to reform a deed against the grantor or someone claiming through him. Illustrative are *Marvin v. Kelsey*, 373 Ill. 589, where one sister sought to reform a deed against another sister who claimed through the grantor as one of his heirs, and *Strayer v. Dickerson*, 205 Ill. 257, where a mother sought to reform a deed against her daughters who claimed the property as the heirs of the grantor. *Stanforth v. Bailey*, 344 Ill. 38, holds that a purely voluntary conveyance, without consid-

eration, and which fails to correctly describe the property of the grantor because of a mistake of the scrivener, will not be reformed at the suit of heirs of the grantee against the devisees of the grantor.

Similar factual situations are presented in all the authorities from other jurisdictions cited by defendant, with the exception of *Union Trust Co.* v. *Boardman,* 215 App. Div. 73, 213 N.Y.S. 277. Collectively, these decisions establish and follow the familiar principle that a court of equity will not entertain an action by a voluntary grantee to reform a deed for mistake against his grantor, or anyone claiming through or under him as heirs, devisees, purchasers, creditors or subsequent grantees. This rule is founded upon fundamental principles of equity, for it would be an obvious injustice to permit a grantee who has given neither a valuable nor a meritorious consideration to enlarge upon the grantor's bounty against the interest of the donor grantor or those deriving their title through him. Thus, where, as the result of a mistake of a scrivener, the grantor retains title to land which he intended to convey by a deed of gift to a voluntary grantee, the grantee acquires no rights against the grantor, or his heirs, devisees or subsequent grantees, to compel a reformation of the deed since this would amount to specific performance of an executory promise to make a gift.

In *Union Trust Co.* v. *Boardman,* 215 App. Div. 73, 213 N.Y.S. 277, the Appellate Division of the Supreme Court of New York reversed a decree of the trial court reforming a trust agreement for alleged errors in the settlor's computation of the shares of certain beneficiaries which were contrary to an intention of the settlor expressed prior to the execution of the trust agreement. There was no mistake in the deed in trust and the grantor had completely divested himself of all interest in the property involved. In addition, the action was by two beneficiaries against their cobeneficiaries and none of the parties claimed as

heirs of the grantor. But here the similarity between the *Boardman case* and the present case ends. The distinguishing facts are that, in the New York case, the settlor himself drew the trust agreement and the mistake, if any, was his own and not that of a scrivener; the precise intent of the settlor rested largely on conjecture, and the alleged error sought to be reformed was not a mistake in the description of the property but an error in the computation of the percentage of the trust *corpus* to be received by two of the remaindermen. Furthermore, the New York court itself stated, "There are, as we have said, authorities in other jurisdictions * * * indicating that a court of equity may as between volunteers make reformation, after the death of the donor, of certain provisions of a document affecting only themselves. None is approximate in similarity to the facts here. It would serve no useful purpose to discuss or attempt to distinguish these authorities. Very largely they deal with errors in the description in a deed and the mistakes of a scrivener which defeat the definite purpose in the mind of the grantor, and such errors have been corrected."

In the case at bar, we are not presented with a situation where, as the result of a scrivener's mistake, the grantor of a voluntary deed retained title to all or part of the land intended to be conveyed and the deed is sought to be reformed against the interest of the grantor or those claiming under him. The deed to Hunter, as trustee, was effective to convey all the right, title and interest of John Jarmuth in the land here involved, and it is significant that plaintiff neither sought nor obtained reformation of the deed in trust, as distinguished from the trust agreement. Following the execution of the deed in trust and the trust indenture, Jarmuth had no further interest in the land and, contrary to the assertions of defendant, it is manifest that neither of the parties is claiming or can claim any interest

in the land as an heir or devisee of her father. A true appraisal of the facts shows that each claims as co-beneficiary of a single trust created by her father.

The facts and circumstances recounted impel the conclusion that it is not merely the right but the undoubted duty of a court of equity to reform the instrument to conform with the intention of the grantor. The power and authority of a court of equity to correct the mistakes of a scrivener incorporated into a contract, deed, or other instrument is so well known as to require no citation of authorities. While it is equally true that equity will not interfere in favor of a volunteer against his grantor and those claiming under him, (*Marvin* v. *Kelsey,* 373 Ill. 589; *Strayer* v. *Dickerson,* 205 Ill. 257,) because to do so would enlarge the bounty of a recipient at the expense of and against the interest of the donor grantor, (*Adair* v. *Mc-Donald,* 42 Ga. 506; *Miles* v. *Miles,* 84 Miss. 624,) this exception can have no application to the present factual situation. Here, the grantor's interest in the property itself is not involved. The contest is not one between a volunteer and a grantor or the grantor's successors in interest. The present litigants are co-beneficiaries of a voluntary trust agreement. Their claims arise out of the same instrument and are not founded in any way upon their additional status as heirs of the grantor.

The decretal order of the superior court reforming the trust agreement to correct the admitted error of the scrivener is not adverse to the interest of the grantor. On the contrary, the decree is in harmony with his interest, since it effectuates his manifest intention to divide the property in question equally between his two daughters. Indeed, this is a compelling reason for holding that a plaintiff beneficiary in a voluntary trust agreement has the right to have the agreement reformed as against defendant, the other beneficiary, claiming under the same instrument.

Although defendant specifically admits that the trust indenture, as uncorrected, fails to carry out the actual intention of the grantor, she suggests, nevertheless, that a court of equity should not reform the agreement, thereby permitting the manifest error of the scrivener to be perpetuated, upon the ground that plaintiff, having paid nothing, has lost nothing. By the same token, defendant has paid nothing and seeks to become greatly enriched at plaintiff's expense and contrary to the intention of the grantor. Fundamental principles of equity jurisprudence demand the affirmance of the decree reforming the trust indenture and compelling defendant to divest the portion of the property which she undeservedly acquired by an admitttedly mutual mistake of all the parties to the trust agreement.

Defendant complains that the testimony of plaintiff as to the acts and conversations of John Jarmuth during his lifetime is not competent evidence. Section 2 of the Evidence Act forbids any party to any civil action to testify therein on his own motion or in his own behalf when any adverse party sues or defends as executor, administrator, heir, legatee or devisee. (Ill. Rev. Stat. 1949, chap. 51, par. 2.) Laura Heiby is the principal defendant and Hunter, as trustee, is a codefendant. Defendant asserts that she occupies a position of an heir and, also, of donee. Plaintiff does not sue and defendant does not defend as heir of the grantor, within the contemplation of the statute. Both, it is true, are "heirs of a deceased person," but their rights flow from the trust agreement and not from their relationship. This being so, section 2 of the Evidence Act has no application.

The decree of the superior court of Cook County is right, and it is affirmed.

*Decree affirmed.*