WELLS, Judge.
(Concurring in part and dissenting in part).
While I agree with the majority’s resolution of the attorney’s fee issue, for the following reasons I dissent from that part of the opinion affirming denial of reformation of Edgar Sonder’s trust.
Cecilia Reid appeals from an order denying her petition to reform a trust, the order stating only that “[t]he above Amended Petition for Reformation is hereby denied.” In Reid v. Temple Judea, 994 So.2d 1146, 1148 (Fla. 3d DCA 2008), the precursor standing case, this court concluded that “equity will reform an agreement so as to conform to the intent of the parties, when an agreement, which due to a mistake of the drafter, violates or fails to carry out the intention of the parties .... ” (Citations omitted, emphasis added); see also In re Estate of Robinson, 720 So.2d 540, 542, 543 (Fla. 4th DCA 1998) (holding that “a trust with testamentary aspects may be reformed after the death of the settlor for a unilateral drafting mistake so long as the reformation is not contrary to the interest of the settlor”) (citing Reinberg v. Heiby, 404 Ill. 247, 88 N.E.2d 848 (1949), Berman v. Sandler, 379 Mass. 506, 399 N.E.2d 17 (1980), and Roos v. Roos, 42 Del.Ch. 40, 203 A.2d 140 (1964), and noting that all of these cases reformed trusts after the death of the settlor where clear and convincing proof of a drafting error existed).
Indeed, section 736.0415 of the Florida Statutes, the provision governing reformation actions such as this, expressly provides that unambiguous provisions of a trust may be reformed where clear and convincing evidence shows that the language of the trust does not reflect the settlor’s intent, even where the evidence regarding the settlor’s intent is contrary to the trust itself:
Upon application of a settlor or any interested person, the court may reform the terms of a trust, even if unambiguous, to conform the terms to the set-tlor’s intent if it is proved by clear and convincing evidence that both the accomplishment of the settlor’s intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement. In determining the settlor’s original intent, the court *12 may consider evidence relevant to the settlor’s intent even though the evidence contradicts an apparent plain meaning of the trust instrument.
§ 736.0415, Fla. Stat. (2010) (emphasis added).
The evidentiary standard imposed by this provision is met when a credible witness distinctly recalls the facts and details them:
The evidentiary standard of clear and convincing evidence in the context of reformation contemplates testimony from a credible witness who testifies to facts that are:
distinctly remembered and the details thereof narrated exactly and in due order and that the testimony be clear, direct and weighty and convincing, so as to enable you to come to a clear conviction without hesitancy of the truth of the precise facts and issue.
Aetna Insurance Company v. Paddock, 301 F.2d 807, 811 (5th Cir.1962). See also [ ] Golden Door Jewelry Creations v. Lloyds Underwriters, 8 F.3d 760 (11th Cir.1993), reversed in part on other grounds, 117 F.3d 1328 (11th Cir.1997).
Universal Underwriters Ins. Co. v. Abe’s Wrecker Serv., Inc., 564 F.Supp.2d 1350, 1356-1357 (M.D.Fla.2008).[1]
In this case, the unrefuted testimony of the drafting lawyer was that by virtue of a drafting error, the settlor’s intention of giving his long-time nurse, Cecilia Reid, the apartment in which the settlor lived (a non-monetary gift) was thwarted by the trust instrument which combined both monetary and non-monetary gifts to Reid and made both gifts inferior in priority to a number of other monetary gifts.[2] As the drafting attorney’s signed affidavit, Exhibit C to the Amended Petition to Reform Trust, attests, the settlor (in amending an existing trust agreement) never intended any monetary gifts to take priority over the non-monetary gift of his apartment and its contents to Reid:
5. Edgar Sonder reviewed Exhibit A [a list of gifts handwritten by Sonder] with me, and Edgar Sonder clearly intended to have as two separate gifts to Cecilia Reid, the apartment and its contents and a cash gift $25,000. He did consider these as two separate gifts, and he did not intend the apartment and its contents to be combined with the gift of $25,000, nor did he intend to have the apartment utilized to pay any cash gifts.
6. Edgar Sonder did not intend to have the payment of any cash gift pro *13 vided in his will or trust made in priority to the gift of the apartment and its contents to Cecilia Reid. Edgar Sonder intended to provide for the gift of his residence and its contents as a separate gift to Cecilia Reid.
(Emphasis added).
This sworn statement is fully supported by Exhibit A,[3] a list written in the settlor’s hand, which states the settlor’s intention to endow a scholarship in the amount of $125,000; to give his apartment and its contents to Reid; to allow his executor to dispose of his car; and to give his godson $25,000, Reid $25,000, and Louis Garcia $10,000, with “any remaining monies ... to be distributed evenly to [two] charities.” The statement evidences no intention to make the gift of the apartment and its contents to Reid subject to any of the other monetary gifts.
More significantly, the drafting attorney’s affidavit further attests that it was solely by virtue of his drafting error that the settlor’s intent to make a specific gift of the apartment and its contents (a gift not tied to or subject to any other monetary gift) was not evidenced by the trust that he drafted:
7. Subsequently, I drafted the Edgar Sonder Amended and Restated Trust, and I combined the $25,000 gift to Cecilia Reid and the gift of the apartment and contents and placed them in subparagraph a. of Paragraph 3 of Article II of the Edgar Sonder Amended and Restated Trust Agreement, believing that the specific gift of the apartment and its contents would not be altered or converted to a general gift by combining it with the pecuniary gift to Cecilia and by including it in a paragraph providing for other cash gifts. If the combination of the gift of the apartment and its contents with the gift of $25,000 to Cecilia Reid and placement in Paragraph 3 of Article II of the Amended and Restated Trust Agreement converts the specific gift of the residence and its contents to a general gift and subjects the gift of the apartment and its contents to the priority system established in the trust agreement, such result was a drafting error on my part, and it did not reflect the intent of Edgar Sonder.
(Emphasis added).
These statements are wholly unrebutted and were, in fact, fully supported by the testimony at the reformation hearing. Testifying first at the reformation action was Dr. Gerald Pinnas, a family physician and friend of the settlor, Mr. Sonder, who confirmed the drafting attorney’s position:
Q. Mr. Pinnas, Doctor, did he [Mr. Sonder] ever communicate to you how or have conversations with you regarding his apartment?
A. As we had our lunch together and got to know each other better on a more personal basis, eventually he started explaining to me that Cecilia [Reid], who had been with his wife, Hertha, and him, had been so kind to him and took such good care of them, he wanted to do something special for her. And he told me that he was going to leave her his apartment and all of its contents.
The drafting attorney, the second and only other witness to testify, likewise reaffirmed the statements that he made in his earlier affidavit that he, the drafting attorney, had made a drafting mistake, resulting in a document that did not reflect Mr. Sonder’s intentions. Specifically, the drafting attorney testified that approximately six months after the settlor executed a pour over will and revocable trust, the *14 settlor contacted the attorney to revise the trust to provide for the settlor’s long-time nurse, Cecilia Reid. The attorney then visited the settlor at his home at which time the settlor gave him a list detailing a number of gifts that he wanted to include in his trust — the handwritten list which was Exhibit A to the attorney’s affidavit which became Exhibit 6 at the reformation hearing. During that meeting, the settlor expressly told the attorney that he wanted the apartment and its contents to go to Reid in addition to his cash gift to her. While the settlor identified the apartment as a distinct gift, separate and apart from the money he was leaving Reid, the drafting lawyer revised the $20,000 cash gift to Reid detailed in the existing trust agreement to reflect the settlor’s desire to increase that sum to $25,000 and then placed the separate gift of the apartment and its contents in the same paragraph, incorrectly believing that this placement would have no effect on what the settlor clearly intended to be a specific devise of the apartment and its contents.[4]
In fact, the attorney testified, again without contradiction, that when questioned by the settlor, the attorney advised him that placing the two gifts in the same paragraph, in categories created by the attorney, would have no effect on the gift of the apartment and its contents. The attorney also testified that it was not until after the court below construed the trust to make the gift of the apartment and its contents subject to satisfaction of the other cash gifts that the attorney became aware that the trust did not reflect the settlor’s intent:
Q. Based on your understanding of the court’s construction of that specific provision, is it your understanding that that court’s construction comports with the intent of Edgar Sonder on how to dispose of his apartment and its contents?
A. The court construed the provision of 3 A on page three of the Amended and Restated Trust Agreement to provide that the devise of the apartment and the contents to Cecilia Reid was subject to the priority put in the Trust Agreement, so that the apartment and its contents was to be used to pay all the gifts provided to the Charities, including Hebrew Union College.
That was not the intent expressed to me by Edgar Sonder. Edgar Sonder clearly wanted his apartment and its contents to be given to Cecilia Reid, not subject to any priority or to any payment of any other gifts provided in his Amended and Restated Trust Agreement.
It certainly wasn’t to be combined with the $25,000 gift to Cecilia Reid because as shown on his directions [Exhibit A to the affidavit and Exhibit 6 at the reformation hearing], the apartment and contents will stand along [sic]. There is no priority. And it was not combined with the gift of $25,000 to Cecilia.
That was my drafting. It was not his intent. His intent was for her to get the apartment and the contents, and that’s why he had — the remainder of his Trust was the remaining cash. I wrote in here the rest and the remainder. He was talking about the remaining cash would go to the charities, not — because he had no other assets other than the contents and the apartment that weren’t *15 cash that he specifically gave to Cecilia Reid.
I am basing all of my testimony on Mr. Sonder’s expression to me, not only in writing, but also verbally and throughout the period, he was always— throughout his life from 2001 he was always convinced that Cecilia Reid would get the apartment and its contents.
It was only after the court construed the devise that I realized I — if that is correct, then I have a scrivener’s error because it was never my intent or Edyar Sonder’s intent to have the apartment and the contents that were devised put in with the priority system for pecuniary yifts.
(Emphasis added).
Absent a determination that all or some of this testimony was not credible, the uncontradicted evidence that by virtue of a drafting error the trust at issue did not reflect the settlor’s intent could not be ignored by the lower court. See Brannen v. State, 94 Fla. 656, 114 So. 429, 430-31 (1927) (“Uncontroverted and undiscredited evidence is not necessarily always binding upon a court or jury, as, for instance, when it is essentially illegal, contrary to natural!] laws, inherently improbable or unreasonable, opposed to common knowledge, inconsistent with other circumstances established in evidence, or contradictory within itself. Ordinarily, however, and subject to certain well-defined exceptions (see 23 C.J. 47), such evidence, when material, properly admitted, and when it consists of facts (not opinions), cannot be wholly disregarded or arbitrarily rejected even though the witness giving it is an interested party.”); see also Pepper v. Pepper, 66 So.2d 280, 285 (Fla.1953) (same); Republic Nat’l Bank of Miami, N.A. v. Roca, 534 So.2d 736, 738 (Fla. 3d DCA 1988) (“A trial court cannot arbitrarily reject unrebutted testimony. In re Estate of Hannon, 447 So.2d 1027 (Fla. 4th DCA 1984); see also Ackerly Comm., Inc. v. City of W. Palm Beach, 427 So.2d 245 (Fla. 4th DCA 1983). Where the testimony adduced is not ‘essentially illegal, contrary to natural laws, inherently improbable or unreasonable, opposed to common knowledge, or inconsistent with other circumstances in evidence,’ Laragione v. Hagan, 195 So.2d 246 (Fla. 2d DCA), rev’d on other grounds, 205 So.2d 289 (Fla.1967), it should not be disregarded but accepted as proof of the issue. Florida East Coast Ry. v. Michini, 139 So.2d 452 (Fla. 2d DCA 1962), cert. discharged, 152 So.2d 171 (Fla.1963).”); Bergh v. Bergh, 160 So.2d 145, 146 (Fla. 1st DCA 1964) (“[W]hen uncon-tradicted testimony consists of facts, as distinguished from opinions, and is not illegal, improbable, unreasonable or contradictory within itself, it should not be wholly disregarded, but should be accepted as proof of the issue.”); Kinney v. Mosher, 100 So.2d 644, 646 n. 1 (Fla. 1st DCA 1958) (same).
The majority concludes, however, that this competent, substantial, credible, and uncontradicted evidence may be ignored because “there is no evidence [the settlor] would not have been capable of understanding the trust as written [and][i]n fact, nothing in the record explains why Sonder, an articulate and precise businessman, would have approved the plain and simple trust terms if they did not reflect his intent.” This conclusion not only renders superfluous section 736.0415 but ignores the record as well.
The express purpose of section 736.0415 is to permit reformation of an otherwise clear, unambiguous written trust signed by a settlor where evidence exists that the “plain meaning of the trust instrument” *16 does not evidence the settlor’s intent. Thus the fact that this articulate, ninety-three-year-old former businessman signed a document that did not on its face encompass what he wanted is non-determinative.[5] The record is that this settlor knew what he wanted, questioned his attorney as to whether the document he signed encompassed that desire, and was repeatedly but incorrectly assured that it did.
Of course, a client is entitled to rely on the skill of his attorney to draft an agreement that encompasses his intent. In this case, the record confirms that this astute but elderly businessman, who was not a lawyer, retained a probate and estate lawyer not only to draft a new will after his wife died, but also to create a trust and then to have that same lawyer revise it at least four times. The record also confirms that between 1998 when the relationship began and 2005 when he died, this settlor frequently wrote to, spoke to, and met with his attorney, both at his home and at his attorney’s offices. Most importantly, the record — without contradiction — is that this settlor told his attorney what he wanted, questioned his lawyer as to whether he was getting it, and was repeatedly assured by that lawyer — who himself had no idea that he had not accomplished his client’s goals — that the settlor was getting what he wanted.[6] Therefore, the fact that this settlor was intelligent and precise, and the trust clear and unambiguous, does not support the instant denial of reformation under section 736.0415 of the Florida Statutes.
The majority’s conclusion that reformation was properly denied because “[t]he testimony does not establish [that the set-tlor] would have preferred the gift [of the apartment and its contents] to Reid over the [$125,000] endowment gift [to Hebrew Union College] in the event both could not be satisfied,” finds no support in the record. To the contrary, the uncontradicted testimony was that while the settlor made a number of cash gifts including a $125,000 *17 gift to fund an endowment to Hebrew Union College and a $25,000 cash gift to Reid, he always intended the non-cash gift of the apartment and its contents to go to Reid as a specific devise not subject to any priority or payment of any pecuniary or cash gift:
A.... Edgar Sonder clearly wanted his apartment and its contents to be given to Cecilia Reid, not subject to any priority or to any payment of any other gifts provided in his Amended and Restated Trust Agreement.
(Emphasis added).
The unrebutted testimony also was that the non-pecuniary gift of the apartment and its contents to Reid was placed at the end of a provision providing for an existing pecuniary gift to Reid because the drafting attorney mistakenly believed that this placement would have no effect on this non-pecuniary gift, that is, that this placement would not make the apartment and contents subject to payment of any pecuniary gift, including the pecuniary gift to the Hebrew Union College endowment:
A.... I’m trying to say that ... the court determined] that apartment and contents created a pecuniary gift, pecuniary is an amount and sum of money.... [T]he apartment is not part of the pecuniary gifts, which I never thought it was, by adding it to the $25,000 [pecuniary gift to Reid]. So it is set aside separately as a specific gift of specific property thereby not subject to the priority system for pecuniary gifts, which is not a pecuniary gift anyway.
Q. Let me ask you this, draft it for the court right now how is the reformation to take place?
A. I devise my apartment and contents to Cecila [sic] Reid separate and distinct from all the pecuniary gifts.
Q. Where would that be placed?
A. Anywhere you want it, just so it is before the remainder gifts. It is a specific gift. It does not abate until all the other gifts do.
Q. This only arose after the petition for abatement?
A. It was only after the court construed the devise that I realized I — if that is correct, then I have a scrivener’s error because it was never my intent or Edgar Sonder’s intent to have the apartment and the contents that were devised put in with the priority system for pecuniary gifts.
Thus, contrary to the majority’s conclusion, the uncontroverted testimony was that the settlor did prefer the non-pecuniary gift of the apartment and its contents over all other gifts including the cash gift to the endowment. Reformation could not, therefore, be denied for this reason.[7] Moreover because the evidence was that the drafting attorney mistakenly believed that placing this non-pecuniary specific gift at the end of a pecuniary devise to the same beneficiary would have no effect on the nature of the non-pecuniary gift and did not realize the error until the trial court ruled that the non-pecuniary gift of the apártment was pecuniary and therefore subject to the priorities that applied *18 to the other pecuniary gifts, reformation should have been granted.
Because it was proved by clear and convincing evidence that'both the accomplishment of the settlor’s intent and the terms of the trust were affected by a drafting mistake, the evidentiary standard imposed by section 736.0415 was satisfied, and the reformation sought should have been granted. Accordingly, I would reverse.

. See N.L. v. Dep't of Children & Family Servs., 843 So.2d 996 (Fla. 1st DCA 2003); R.S. v. Dep’t of Children & Family Servs., 831 So.2d 1275 (Fla. 4th DCA 2002); Kingsley v. Kingsley, 623 So.2d 780 (Fla. 5th DCA 1993); see also 24 Fla. Jur.2d Evidence and Witnesses § 507 (2010).

. The trust, as we explained in our earlier decision, provided:
Specifically, Article II, paragraph 1 of the trust as amended, titled "Pecuniary Gifts," provided for gifts totaling $31,000 to ten charities. Article II, paragraph 2 as amended, titled “Endowment Gift," provided that "[a]fter the gift listed in paragraph 1. directly above," $125,000 was to be paid to the Hebrew Union College Jewish Institute of Religion. Article II, paragraph 3 as amended, titled "Pecuniary Gifts to Individuals," provided that "[a]fter giving effect to the gifts in paragraphs 1. and 2. above,” a number of specific gifts were to be made to enumerated individuals including a gift of $25,000 and the apartment in which Son-der then resided to Cecilia Reid:
After giving effect to the gifts in paragraphs 1. and 2. above, I hereby give and devise as follows:
a. Cecilfija Reíd. I give to my nurse, CECIL[I]A REID, if she survives me, the sum of $25,000 and my apartment in which I currently reside, all the contents therein.
Reid, 994 So.2d at 1147 (footnotes omitted).

. This exhibit became Exhibit 6 at the reformation trial.

. The drafting attorney's testimony confirmed that over time the settlor had repeatedly expressed his intention that Reid be the recipient of the apartment: "he [the settler] had told me that he was going to leave her [Reid] the apartment and its contents ... [a]t least a half dozen times.”

. As the Restatement (Third) of Property: Wills & Other Donative Transfers § 12.1 (2003), confirms, execution of a document, following review by a settler, should, for a number of reasons, carry no conclusive effect:
l. Donor's signature after having read document does not bar remedy. Proof that the donor read the document or had the opportunity to read the document before signing it does not preclude an order of reformation or the imposition of a constructive trust. The English Law Reform Committee, in recommending the adoption of a reformation doctrine for wills, stated well the rationale for this position:
We have also considered whether any special significance ought to be given to cases in which the will has been read over to the testator, perhaps with explanation, and expressly approved by him before execution. In our view it should not. Some testators are inattentive, some find it difficult to understand what their solicitors say and do not like to confess it, and some make little or no attempt to understand. As long as they are assured that the words used carry out their instructions, they are content. Others may follow every word with meticulous attention. It is impossible to generalise, and our view is that reading over is one of the many factors to which the court should pay attention, but that it should have no conclusive effect.
Law Reform Committee, Nineteenth Report: Interpretation of Wills, Cmnd. No. 5301, at 12 (1973).

. The question and the testifying attorney's response confirmed the settlor’s reliance on his counsel:
Q. This precise, articulate, strong-willed man could read and write English, and as you sit here today you have no reason to say that he didn’t understand what you were doing?
A. That's not true. Sir, as I have testified over and over, Mr. Sonder told me what he wanted and he depended on me to put it in the correct document and phrase it correctly.

. Also worth noting, the record confirms Reid’s continued and expanded role in Mr. Sonder’s life from 1998 until the time of his death in 2005, at the age of ninety-three or ninety-four. This is reflected both in the testimony of the witnesses and in the controlling document. First, she was given a pecuniary bequest, then that bequest expanded and the apartment and its contents were devised to her. Then she was made the recipient of the “rest, residue and remainder” of the trust, appointed a successor trustee, and finally given a durable power of attorney.